916 So.2d 584 (2005)
Seitu Anderson AL-FATAH, Appellant
v.
STATE of Mississippi, Appellee.
No. 2003-KA-01824-COA.
Court of Appeals of Mississippi.
December 13, 2005.
*585 Carrie A. Jourdan, attorney for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
EN BANC.
GRIFFIS, J., for the Court.
¶ 1. This cause was brought to trial in the Circuit Court of Lowndes County by the State of Mississippi against Seitu Anderson Al-Fatah for the crimes of burglary of a dwelling and aggravated assault. After trial on the merits, he was convicted of both crimes. Aggrieved by this decision, Al-Fatah timely perfected his appeal. Finding no error, we affirm.

FACTS
¶ 2. On November 16, 1999, Jeffrey Harris, then employed as an officer with the Columbus Police Department, responded to a disturbance call at a local home. When Officer Harris arrived at the door of the dwelling, he was met by Dearius Hayes, whose hand was cut and bleeding. Also present at the home were Hayes's three younger sisters. Officer Harris entered the home and found that it had been ransacked. He further observed a sword resting in a corner of the room, a baton *586 atop a speaker, a long knife on the kitchen table, and a glove on the couch.
¶ 3. According to the testimony of Dearius Hayes, he fell asleep on the night in question in front of the family television and was awakened between 3:00 and 3:30 a.m. by a pinching sensation he later attributed to being attacked with a stun gun. When he awoke, Dearius saw two men standing above him who were dressed in black and were wearing ski masks. Dearius testified that one of his attackers was approximately six feet, three inches tall and that the shorter man was about five feet, ten inches in height. After waking, Dearius immediately began to struggle with the men, and was able to wrest control of the stun gun from one of his attackers. During the struggle, Dearius fell backwards onto the couch where his sister Shameka was sleeping, thus waking her. According to Dearius, he saw one of the men reach into his clothing for an object and that he next confronted the second man in an attempt to gain control of the weapon. Shameka would later testify that the object in dispute was a knife. During the struggle, a knife and sword were dropped by the attackers before they fled the house. Once the men had departed, Dearius noticed the cut on his finger, which had occurred while struggling to disarm his attacker and which later required stitches. Both Shameka and Dearius testified that the men lost their masks in the struggle and that they were able to identify Bashir Al-Fatah, Seitu's son, as the shorter attacker. Shameka also testified that Bashir was the man holding the knife and that Seitu wielded the sword. She was further able to identify Seitu Al-Fatah as the taller attacker.
¶ 4. Search and arrest warrants were immediately issued for Seitu and Bashir Al-Fatah, and the warrants were executed later that same day. At the Al-Fatah home, police found the stun gun as well as a sheath for the sword found at the Hayes residence. Seitu and Bashir would later testify that they had spent the evening taking Shameka to Wal-Mart. According to the two men, Bashir and Dearius had exchanged words due to a pre-existing dispute, when the men dropped Shameka off at home at approximately 10:00 p.m. According to the Al-Fatahs, the two men ate dinner, watched television, and went to bed without ever having left their home on the night of the assault.
¶ 5. Seitu Al-Fatah was indicted on February 12, 2000, on the charges of burglary of a dwelling and aggravated assault. The trial was held on May 28, 2003. After trial on the merits, Seitu Al-Fatah was convicted on both counts. Aggrieved by this decision, Al-Fatah asserts the following errors on appeal: (1) whether the trial court erred by denying Al-Fatah an instruction to the jury that would allow it to consider the lesser offense of simple assault; and (2) whether the trial court erred by not permitting defense witness Ernie Verdine to testify through the misapplication of Mississippi Rule of Evidence 613(b).

ANALYSIS

I. Whether the trial court erred by denying Al-Fatah an instruction to the jury that would allow it to consider the lesser offense of simple assault.
¶ 6. Al-Fatah alleges that the trial court erred in not granting him an instruction to the jury for the lesser offense of simple assault as to Count II of his indictment. "In determining whether error lies in granting or refusal of various instructions, the instructions given must be read as a whole. If the instructions announce the law of the case fairly, and create no injustice, no reversible error will be found." Taylor v. State, 763 So.2d 913, *587 915(¶ 8) (Miss.Ct.App.2000). Generally, the granting of instructions should err on the side of inclusion rather than exclusion. Taylor v. State, 577 So.2d 381, 383-84 (Miss.1991). "[L]esser-included offense instructions should not be indiscriminately granted. Rather, they should be submitted to the jury only where there is an evidentiary basis in the record therefor." Lee v. State, 469 So.2d 1225, 1230 (Miss. 1985). "A lesser included offense requires that the elements of the greater offense contain the elements of the lesser offense." Green v. State, 884 So.2d 733, 737(¶ 11) (Miss.2004).
¶ 7. At trial, Al-Fatah submitted jury instructions labeled "D-8" and "D-9," respectively, which attempted to put the lesser charge of simple assault before the jury. The elements of simple assault are provided by Mississippi Code Annotated § 97-3-7(1) (Supp.2005):
A person is guilty of simple assault if he (a) attempts to cause or purposely, knowingly or recklessly causes bodily injury to another; or (b) negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm; or © attempts by physical menace to put another in fear of imminent serious bodily harm; and, upon conviction, he shall be punished by a fine of not more than Five Hundred Dollars ($500.00) or by imprisonment in the county jail for not more than six (6) months, or both.
After being presented with the instructions, the trial court stated as follows:
The proffered instruction is refused as not being supported by the evidence in this case. It is not the law that a defendant is always entitled to a lesser or lesser included instruction. It must be supported by the evidence. The Court recalls the evidence elicited by the defendant and the defendant says that he wasn't there, so he couldn't have negligently caused any injury. As a matter of fact, the defendant's testimony was that he was at home asleep. Refused, not supported by the evidence.
Al-Fatah now argues that the trial court was overly restrictive in refusing his instructions. Al-Fatah notes that the difference between a charge of aggravated assault and the lesser offense of simple assault is between the nature or means of the injury caused or attempted to be caused. According to Al-Fatah, the evidence at trial was unclear as to how the cut on Dearius's finger was caused, and as such, the jury should have been allowed to consider simple assault. Al-Fatah asserts that the jury could have found that the cut could have occurred in a manner other than through contact with the weapons and that because the wound was not stitched until three days after the incident, it was not a serious bodily injury. Al-Fatah's contention that the injury was not "serious" due to the chronology of the treatment is untenable and will not be considered.
¶ 8. The State, in turn, asserts that the trial court did not err in refusing to grant the simple assault instruction, as "there was no testimony that the cutting was negligently done" due to Al-Fatah's defense that he was at home and asleep instead of at the crime scene. The State's rationale was shared by the trial court, as according to the court, if Al-Fatah's defense was that he was not present at the house to commit the assault, he could not argue for a lesser-included offense instruction that would have the jury believe that Al-Fatah committed the assault negligently.
¶ 9. The jury instructions at issue are D-8 and D-9, which were refused by Judge Lee J. Howard. Instruction D-8 read:

*588 SEITU ANDERSON AL-FATAH has been charged with the crime of aggravated assault upon Dearius Hayes, a human being, in Count 2 of the indictment. If you the jury find from the evidence in this case beyond a reasonable doubt that:
1. SEITU ANDERSON AL-FATAH, on or about November 16, 1999, in Lowndes County, Mississippi,
2. knowingly and purposefully caused serious bodily injury to Dearius Hayes
3. with a sword, by cutting Dearius Hayes on the hand and
4. that the sword was a deadly weapon
then you shall find the Defendant, SEITU ANDERSON AL-FATAH, guilty as charged in Count 2 of the indictment.
If the State has failed to prove any one, or more, of the above-listed elements beyond a reasonable doubt, then you shall find the Defendant, SEITU ANDERSON AL-FATAH, not guilty of the crime of aggravated assault in Count 2.
If you do not find sufficient evidence to convict the Defendant, SEITU ANDERSON AL-FATAH, of the crime of aggravated assault, then you may continue your deliberations to consider the lesser included offense of simple assault upon Dearius Hayes.
(emphasis added).
¶ 10. Judge Howard refused Instruction D-8. He reasoned that Instruction D-8 was similar if not identical to Instruction D-4, which had been given, and it was an incorrect statement of the law. Judge Howard's concern was that Instruction D-8 required a finding of "serious bodily injury." Instruction D-4 did not include the term "serious." He correctly noted that "[i]f a deadly weapon is employed, the statute does not say you have to cause serious bodily injury. It just says you have to cause or attempt to cause bodily injury.... It does not have to be serious." Mississippi Code Annotated Section 97-3-7(2)(b) (Supp.2005) provides that a person is guilty of aggravated assault if he "attempts to cause or purposely or knowingly causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm[.]" Al-Fatah's counsel responded with a request that a simple assault instruction be given. Judge Howard noted that it would be considered if offered.
¶ 11. We find no error in Judge Howard's refusal of Instruction D-8. Indeed, Judge Howard's analysis was correct. Instruction D-8 was repetitive and was an incorrect statement of the law. Furthermore, Instruction D-8 should not be considered as a simple assault instruction, because it does not include the necessary elements of the crime of simple assault. It is an improper instruction.
¶ 12. The court then considered Instruction D-9, which was nearly identical to Instruction D-8, but it added the following:
If you find from the evidence in this case beyond a reasonable doubt that:
1. The Defendant, SEITU ANDERSON AL-FATAH, on or about November 16, 1999, in Lowndes County, Mississippi,
2. negligently caused bodily harm to Dearius Hayes, a human being,
3. by cutting Dearius Hayes on the hand with a sword and
4. that the sword was a deadly weapon or a means likely to produce serious bodily injury
then you shall find the Defendant, SEITU ANDERSON AL-FATAH, guilty of the lesser included crime of simple assault. If the State has failed to prove *589 any one, or more of the above-listed elements beyond a reasonable doubt, then you shall find the Defendant, SEITU ANDERSON AL-FATAH, not guilty of the crime of simple assault.
¶ 13. Judge Howard refused Instruction D-9. He determined that there was not sufficient evidence to allow the jury to consider simple assault as a lesser-included offense. He reasoned that:
It is not the law that a defendant is always entitled to a lesser or lesser included instruction. It must be supported by the evidence. The Court recalls the evidence elicited by the defendant and the defendant says that he wasn't there, so he couldn't have negligently caused any injury. As a matter of fact, the defendant's testimony was that he was at home asleep. Refused, not supported by the evidence.
¶ 14. The instruction offered by Al-Fatah refers to simple assault under Section 97-3-7(1)(b). Under this section, "[a] person is guilty of simple assault if he ... negligently causes bodily injury to another with a deadly weapon or other means likely to produce death or serious bodily harm." Miss.Code Ann. § 97-3-7(1)(b) (Supp.2005). Apparently, Judge Howard could not find evidence that the cut to the victim's finger, i.e., the "bodily injury," was "negligently caused."
¶ 15. In the brief, Al-Fatah's counsel argues that a simple assault instruction was necessary, because the victim could not tell the jury exactly how his finger was cut. Counsel argues:
While the jury could, from the testimony, infer that the knife and/or sword were deadly weapons and did cause the injury, the jury could also have reasonably found that, in the struggle to repel the burglars, Dearius Hayes cut his finger inadvertently in a manner other than upon the weapons or that, the weapons, because they were closed or concealed, were not deadly weapons at the moment of the cut, and/or that the wound was not serious bodily injury as it required no immediate physician or nursing care and only received stitches three days after the incident.
While this may seem fanciful or highly improbable, the jury, without a simple assault instruction, in its deliberations, came to the exact issues that should have warranted giving a lesser included assault instruction. In a note, the jury asked:
2. If the cut was the result of Mr. Hayes attempting to disarm the co-conspirator of the defendant by grabbing the knife or sword could this be interpreted as accidental and not purposeful?
3. Does the mere possession of a deadly weapon by one the of the conspirators during the altercation meet the requirements of Count # 2 regardless of whether the defendant attempted to cause bodily injury with a deadly weapon?
¶ 16. The problem with this argument is that it is, as described in Al-Fatah's counsel's own words, "fanciful or highly improbable." Indeed, it is! The evidence belies this argument. The victim, Dearius Hayes, testified that he was asleep in his home when he was awakened by a "pinch," which was actually the Al-Fatahs shocking the victim with a stun gun.[1] As a result, a fight or struggle ensued. The victim identified the weapons he saw that night as "a *590 hunting knife ... a three or four foot sword, stun gun and an iron baton."[2] The victim testified about how his finger was cut:
Hayes: Uh, well [Bashir] was coming towards me, and I saw him reach for something. I didn't know what it was. And I just reached across my body and grabbed whatever he had in his hand, and it appeared to be a sword and a hunting knife.
Prosecutor: What happened when you reached ... for the sword and the hunting knife?
Hayes: Uh, I cut myself on my index finger.
. . .
Prosecutor: Now, did you get injured during the course of this struggle with the defendants?
Hayes: Yes, ma'am.
Prosecutor: Okay, and what happened to you?
Hayes: I got cut on my index finger. I had to get five stitches.
. . .
Prosecutor: Now, Dearius, do you know how you got your hand cut?
Hayes: Well I know I grabbed the two, the sword and the knife, and I felt it when, it bust as soon as I grabbed it. So I don't know which one of them cut it, but I know that it bust on the weapons.
¶ 17. This case does not require that we engage in an extended discussion of Mississippi law on the doctrine of lesser-included offenses. Recently, Professor Michael H. Hoffheimer, of the University of Mississippi School of Law, authored an excellent article that discusses the different tests that are used to determine if a lesser-included offense is actually present and makes some recommendations for consideration by the Mississippi Supreme Court. Michael H. Hoffheimer, Lesser Included Offenses in Mississippi, 74 Miss. L.J. 135 (2004). Instead, we simply need to look at the supreme court's latest discussion of the proper test.
¶ 18. In Friley v. State, 879 So.2d 1031, 1034(¶ 13) (Miss.2004), the Mississippi Supreme Court held:
A jury may convict an accused of a lesser-included offense on trial of any indictment. Miss.Code Ann. § 99-19-5 (Rev.2000); Hailey v. State, 537 So.2d 411, 414 (Miss.1988). The test for determining whether one offense is a lesser-included offense of another is:
Whether applied for the benefit of the state or defense, in order to authorize such instruction the more serious offense must include all the elements of the lesser offense, that is, it is impossible to commit the greater offense without at the same time committing the lesser-included offense. Also, there must be some evidence to support the lesser-included offense.

Sanders v. State, 479 So.2d 1097, 1108 (Miss.1985) (citing Lee v. State, 469 So.2d 1225 (Miss.1985); Ruffin v. State, 444 So.2d 839 (Miss.1984); Lambert v. State, 462 So.2d 308 (Miss.1984); Colburn v. State, 431 So.2d 1111 (Miss. 1983); Presley v. State, 321 So.2d 309 (Miss.1975)).
¶ 19. We find that there was no evidence to support a lesser-included offense of simple assault, under Section 97-3-7(1)(b) of the Mississippi Code Annotated. There was no other proof offered about how Dearius's cuts could have occurred. Any other reason would be mere speculation. We agree with Judge Howard and conclude that there was no evidentiary basis *591 to grant Instruction D-9. We find no merit to this issue.

II. Whether the trial court misapplied Mississippi Rule of Evidence 613(b).
¶ 20. Al-Fatah next asserts that the trial court erred by not allowing defense witness Ernie Verdine to testify as to the content of a statement allegedly made by Dearius through an overly strict application of Mississippi Rule of Evidence 613(b). The trial court found the proper predicate for the statement had not been laid, and therefore it was inadmissible.
¶ 21. "The standard of review regarding the admission or exclusion of evidence is abuse of discretion." Yoste v. Wal-Mart Stores, Inc., 822 So.2d 935, 936(¶ 7) (Miss.2002). A crime victim's out-of-court statement about whether the crime happened or not is hearsay if offered to prove its truth. Lambert v. State, 574 So.2d 573, 577 (Miss.1990). Therefore, it may not come in as substantive evidence, unless it fits a hearsay exception. M.R.E. 802. However, it may be used to impeach the victim's credibility. M.R.E. 613(b). Rule of Evidence 613(b) provides:
Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in Rule 801(d)(2).
(emphasis added). Additionally, before the prior statement can come in, counsel must lay the proper foundation. Hall v. State, 691 So.2d 415, 420 (Miss.1997). The attorney must set the scene for the victim, asking whether on a particular day, in the presence of particular witnesses, the victim made a particular statement. Bush v. State, 667 So.2d 26, 27 (Miss.1996) (quoting Carlisle v. State, 348 So.2d 765, 766 (Miss. 1977)).
¶ 22. In Hall v. State, L.R. was an alleged rape victim who previously told her mother she was never attacked. 691 So.2d at 420. In court, L.R. testified she had been raped by Hall. Id. at 417. Hall wanted to use the initial denial in order to impeach the victim's credibility. Id. at 419. The court held a proper foundation was laid by asking the witness, "Now ... now do you recall one day you and your mother walking down the road and having a conversation; you remember that?" and then, "And do you remember telling your mother that your father had not bothered you?" Id. at 420. The court held it was error not to allow the mother to testify to L.R.'s inconsistent statement.
¶ 23. Here, Al-Fatah wanted to introduce evidence that the victim Dearius told Ernie Verdine that the crime never happened. Ernie Verdine was incarcerated with Dearius at some time after the incident. In a proffer made outside the presence of the jury, Verdine testified that while in jail Dearius had told him that he had made up the charges against the Al-Fatahs and that the cut on his hand had come from a flower pot. The court ruled:
[W]hen Dearius Hayes testified, he was not asked whether he made such a statement to Earnie Vidrine [sic] or not, nor was he required to state with particularity the date, time, place, and persons present which all must be asked of a witness. And if he denies making such statement, then and only then can he be impeached....
Al-Fatah was allowed to recall Dearius to the stand in order to lay this predicate:
Q. Mr. Hayes, were you incarcerated in the Lowndes County Jail, I believe *592 during, subsequent to 1999, when this incident occurred, but prior to this trial?
. . .
A. Yes, ma'am.
Q. Okay and when you were in jail, did you, uh, have an opportunity to meet Earnie Vidrine [sic]?
A. Yes, ma'am.
Q. And did you have an opportunity, or at any time did you speak with Mr. Vidrine [sic] about the events leading up to the events of the burglary and the assault of the night of, I believe it's November 15, [sic] 1999?
A. No, ma'am.
Q. You never spoke with him?
A. Oh, I spoke with him, `cause we played Dominoes, yes, ma'am.
Q. Okay. But you 
A. But I didn't speak about the trial with him.
Q. Okay. Did you ever speak, I know you told me you didn't speak to him about the trial, but did you ever speak with him about the events involving the Fatahs that you allege occurred in your home?
A. No, ma'am.
¶ 24. Verdine was then put back on the stand and only allowed to testify to the fact that the conversation did take place. Later on during Al-Fatah's case-in-chief, the court allowed him to call Dearius to the stand one more time:
Q. Mr. Hayes, I believe at a period subsequent to the November of ninety-nine incident that you allege was committed upon you by Mr. and Mrs., Mr. Al-Fatah and his son, uh, Bashir Al-Fatah, you were incarcerated in the Lowndes County Jail.
A. Yes, ma'am.
. . .
Q. And do you recall being incarcerated with Earnie Vidrine [sic]?
A. Yes, ma'am.
Q. And did you have various conversations with Earnie Vidrine [sic]?
A. No really conversation, unless you might call us playing the games or something else in the day room.
. . .
A. We just played games at the table with several people.
Q. Did you ever discuss with Mr. Vidrine [sic] the allegations that you had made against Bashir Al-Fatah and Seitu Al-Fatah?
A. No, ma'am.
Q. So you never discussed with him the nature and type of those allegations that you had made and why you had made them?
A. No, ma'am.
¶ 25. Unlike Hall, Dearius was never asked to admit or deny a specific statement. He was not asked, "Did you tell Verdine that you made up the charges against Al-Fatah?" He was only asked generally, whether he talked about the crime with Verdine. Therefore, the trial judge was correct in ruling that the only matter on which Dearius could be impeached was whether or not the conversation took place, not what the content of that conversation was. We hold that the trial judge did not abuse his discretion in making this ruling. He correctly instructed counsel as to the law of evidence and gave her three opportunities to comply with it. We affirm the lower court on this issue.
¶ 26. Because Al-Fatah did not raise any assignments of error as to his conviction of burglary, we affirm the decision of the circuit court as to that issue.
*593 ¶ 27. THE JUDGMENT OF THE LOWNDES COUNTY CIRCUIT COURT OF CONVICTION OF AGGRAVATED ASSAULT AND SENTENCE OF TEN YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND CONVICTION OF BURGLARY AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LOWNDES COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., BRIDGES, CHANDLER, BARNES AND ISHEE, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] Certainly, the application of a stun gun is a purposeful and intentional and bodily injury that is caused by a deadly weapon. There was no negligence in the use of the stun gun on the victim.
[2] Each and every one of these items would be considered a deadly weapon.