948 So.2d 465 (2007)
Glen SINGLETON, Jr., Appellant
v.
STATE of Mississippi, Appellee.
No. 2005-KA-02013-COA.
Court of Appeals of Mississippi.
February 6, 2007.
*467 Barney Glenn Poise, attorney for appellant.
*468 Office of the Attorney General by Jeffrey A. Klingfuss, attorney for appellee.
Before MYERS, P.J., CHANDLER and ROBERTS, JJ.
ROBERTS, J., for the Court.
¶ 1. Glen Singleton, Jr. was tried in the Circuit Court of Madison County for the sale of cocaine. Following testimony from a number of witnesses he was found guilty by a jury of selling a schedule II controlled substance within 1,500 feet of a church, and subsequently sentenced by the lower court. Aggrieved by this, Singleton now appeals and raises the following issues, which we quote verbatim:
I. THE TRIAL COURT ABUSED HIS DISCRETION BY DENYING SINGLETON'S MOTIONS FOR DIRECTED VERDICT OR MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FAILING TO GRANT A NEW TRIAL.
II. THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
III. THE COURT ERRED IN OVERRULING THE DEFENDANT'S HEARSAY OBJECTIONS.
IV. THE COURT ERRED IN SUSTAINING THE PLAINTIFF'S OBJECTION TO DEFENDANT'S QUESTIONS OF JAMES JACKSON REGARDING HIS GRAND LARCENY CHARGE.
Finding no error, we affirm.

FACTS
¶ 2. Needing a source of additional income, James Jackson contacted the narcotics division of the Madison County Sheriff's Department (Department) to provide information on the sale of drugs within the city of Flora. Jackson had information on one such salesman, Singleton, or, as he was more affectionately known, Poo-Poo. The Department and Jackson struck a deal in which Jackson agreed to wear a wire while purchasing crack cocaine from Singleton in exchange for one hundred dollars.
¶ 3. On December 10, 2003, Agent Jay Houston and other deputies of the Department began by thoroughly searching Jackson and the Department-owned vehicle he would use for the presence of any drugs. Finding none, they placed the wire and sent Jackson on his way. Jackson then proceeded to what would turn out to be Doris Singleton's house, entered the home, purchased five rocks of crack cocaine, left the house, and drove away from the scene before meeting with Houston. Doris Singleton was Singleton's mother. Houston then immediately obtained the narcotics and sealed them in an evidence bag. Some time later Houston and other deputies attempted to execute an arrest warrant for Singleton at Doris's house in Flora, but Singleton was not present. In January, when Singleton learned the authorities were looking for him, he immediately turned himself in.

PROCEDURAL HISTORY
¶ 4. Singleton was indicted April 28, 2004, on the offense of sale of a schedule II controlled substance in violation of Mississippi Code Annotated Section 41-29-139(b)(1) (Rev.2005), subject to enhancement by Section 41-29-142 as the sale was within 1,500 feet of a church. Singleton's trial on the above offense was held on September 13, 2005. During his trial, Singleton testified that he was not at his mother's house on or around December 10 and had not lived in Flora for four and a half years. However, Singleton was questioned regarding a recent Flora address he *469 listed as his own. Singleton explained that he gave that address only for correspondence with the Circuit Court of Madison County concerning the drug charges against him. In response to this testimony, Houston testified that on a September 20, 2003 traffic ticket Singleton had listed his address as Post Office Box 690, Flora, Mississippi. Additionally, the State introduced a copy of an NCIC report detailing Singleton's driver's license information from the time of the September 2003 traffic incident which listed his address as 108 Pugh Road in Flora, Mississippi. Singleton objected to the admittance of both documents on the basis of hearsay and the trial court overruled both objections. At the close of the State's case and at the close of the defense's case, Singleton made motions for a directed verdict, which were both denied. Following deliberations, the jury returned a verdict of guilty and Singleton was subsequently sentenced on September 15, 2005. Singleton then filed a motion for judgment notwithstanding the verdict or, in the alternative, a new trial on September 23, 2003. This was also denied. This appeal followed.

ANALYSIS
I. WHETHER THE TRIAL COURT ERRED IN SUSTAINING THE STATE'S OBJECTION TO QUESTIONING JACKSON ABOUT HIS GRAND LARCENY CHARGE.
¶ 5. The standard of review we must employ concerning the admission or exclusion of evidence is well settled. "A trial judge enjoys a great deal of discretion as to the relevancy and admissibility of evidence. Unless the judge abuses this discretion so as to be prejudicial to the accused, [this] Court will not reverse [the] ruling." Shaw v. State, 915 So.2d 442, 445(¶8) (Miss.2005).
¶ 6. During cross-examination, the defense attempted to impeach Jackson by showing that he had recently been convicted of grand larceny. The State objected to such questioning and the lower court sustained the objection. The pertinent line of questioning was as follows,
Q [Defense] Mr. Jackson, when they picked you up for this charge of grand larceny, the fact is you lied about your involvement in this grand larceny, did you not, in the beginning?
A. The grand larceny?
Q. Yeah, the grand larceny that you're being held on?
A. No.
Q. You admitted to everything?
A. Yeah.
Q. Okay, you admitted that you were a dishonest person and that you took something that did not belong to you, correct?
A. No, that I ain't what I said.
State: Your Honor, I'm going to object.
Court: Sustained.
. . . .
Q. With regard to the grand larceny, you know that's a crime of dishonesty, do you not?
State: Your Honor, we're going to object.
Court: Sustained.
¶ 7. Singleton cites to M.R.E. 608(b) for support of his argument. M.R.E. 608(b) states in pertinent part, specific instances of conduct "may . . . in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness. . . ." The supreme court has held that grand larceny is not a crime of dishonesty. Adams v. State, 772 So.2d 1010(¶ 57) (Miss.2000). The supreme court went on to agree with this Court that grand larceny is not a crime generally considered to show an individuals tendency *470 for truth and veracity. Id. (citing Bennett v. State, 738 So.2d 300(¶ 9) (Miss.Ct.App. 1999)). Therefore, Jackson's pending charge for grand larceny alone was not probative of his general truthfulness or untruthfulness, and we find the trial court did not abuse its discretion in sustaining the State's objection.
II. WHETHER THE COURT ERRED IN OVERRULING THE DEFENDANT'S HEARSAY OBJECTIONS.
¶ 8. Mississippi Rule of Evidence 801(c) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). "Hearsay is not admissible except as provided by law." M.R.E. 802.
¶ 9. Singleton's first claim of error concerning possible hearsay focuses on Houston's testimony. Specifically, during Houston's direct examination by the State he was asked:
Q. [Assistant District Attorney]. I turn your attention to December 10th of 2003. What were your activities including on that date?
A. [Agent Houston]. My supervisor contacted me, told me that he had a cooperating source that stated that they could purchase narcotics from a subject known only
[Defense Attorney]: Objection to hearsay, your Honor.
The Court: Overruled.
Q. Who was your supervising officer?
A. Lieutenant Tucker.
Singleton proposes that Houston's remarks were inadmissible hearsay as there was no proof presented as to the unavailability of Lieutenant Tucker. First of all, the statement in question was not offered to prove the matter asserted. Therefore, it is not hearsay. Houston did not offer his statement to prove that Lieutenant Tucker called him or even that a cooperating source called Lieutenant Tucker. It was offered to show how he came in contact with Jackson. Furthermore, if Houston's statement did qualify as hearsay it would still be "admissible to the extent required to show why [he] acted as he did and where he was at a particular place at a particular time." Jackson v. State, 935 So.2d 1108(¶ 9) (Miss.Ct.App.2006) (quoting Tate v. State, 819 So.2d 555, 558(¶ 14) (Miss.Ct.App.2002)). Therefore, we cannot say that the trial court abused its discretion in overruling Singleton's objection.
¶ 10. Singleton next argues that the trial court erred in overruling his hearsay objection to the introduction of a photocopy of his driver's license. While the record shows that no photocopy of Singleton's driver's license was ever introduced, but only copies of a NCIC report and justice court record of a traffic citation containing Flora addresses for Singleton, the State nevertheless counters that the driver's license photocopy was admissible pursuant to Mississippi Rules of Evidence 803(8) or 613(b). As to both of the State's arguments, applied to those documents admitted into evidence, we cannot agree.
¶ 11. Mississippi Rule of Evidence 803(8) states, in pertinent part, that the following is not excluded by the hearsay rule:
Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel . . .
M.R.E. 803(8).
¶ 12. Beginning with the NCIC report, the report neither satisfies M.R.E. *471 803(8)(A) nor M.R.E. 803(8)(B). M.R.E. 803(8)(A) pertains to the activities of a public office or agency. An example of the type of report included under this exception is, at least in the federal setting, a "record of receipts and disbursements of the Treasury Department." John W. Strong, McCormick on Evidence § 296 (5th ed.1999). In the case of a NCIC report, this would be akin to a listing of those jurisdictions and agencies from which the NCIC obtained information, not specific information pertaining to one individual. This Court has said that an NCIC report "purport[s] to be a compilation of information gathered from various jurisdictions throughout the country, the accuracy of which cannot necessarily be certified by the NCIC compiler . . . [and the] custodian is not in a position to assess the accuracy of the underlying information provided by the records custodian." Frazier v. State, 907 So.2d 985(¶ 22) (Miss.Ct. App.2005). While the compilation of information is an activity conducted by the NCIC, obtaining the original information is not. It is equally clear, possibly more so, that the NCIC report would not fall under M.R.E. 803(8)(B). Again, the NCIC is a database of information provided by other law enforcement agencies. As such, those working for the NCIC, and the NCIC itself, do not observe those matters reported upon within their reports. Furthermore, we have identified that "an issue of trustworthiness arises when one organization seeks to introduce records in its possession that were actually prepared by another." Armstrong v. State, 828 So.2d 239(¶ 26) (Miss.Ct.App.2002) (citing Harveston v. State, 798 So.2d 638(¶ 7) (Miss.Ct. App.2001)). Therefore, the NCIC report in the case sub judice, as submitted by a member of the Madison County Sheriff's Department, cannot fall under the public records and reports exception.
¶ 13. The next item admitted over objection was the justice court record. This Court was not shown, nor able to find, any statutory provision mandating this State's justice courts obtain and record individuals' address information as either an activity of the justice court or as to "matters observed pursuant to duty imposed by law as to which matters there was a duty to report." Therefore, as was the case with the NCIC report, the computer printout of a justice court record containing Singleton's address would not fall under M.R.E. 803(8), and, under the facts of this case, would be inadmissible hearsay.
¶ 14. The State next argues that the documents were properly allowed into evidence as impeachment evidence and cites to Al-Fatah v. State, 916 So.2d 584(¶ 21) (Miss.Ct.App.2005) in support of its argument. The record shows that during cross examination, Singleton claimed that he had not had a Flora address during the four and a half years proceeding the trial, save for a post office box he used for correspondence with the trial court concerning his trial. Specifically, he stated, "I don't have no mailing address for Pugh Road." Following Singleton's examination, the State called Houston as a rebuttal witness and introduced the two documents. Based on these facts, this argument fails. Al-Fatah cites M.R.E. 613(b) for the proposition that while hearsay evidence may not be admitted as substantive evidence, it may be allowed to impeach. Al-Fatah, 916 So.2d at (¶ 21). While this is an accurate statement of the law, M.R.E. 613(b) does not apply to the documents at issue. Quite simply, the information contained in the documents was not a statement by Singleton, and, thus, would not qualify as a prior inconsistent statement. Therefore, as the two documents in question did not fall under either *472 M.R.E. 803(8) or 613(b), we find that the trial court erred in admitting them over Singleton's objections. Having determined that the lower court erred, we must decide whether the prejudicial effect, if any, of such errors warrants reversal. Parker v. State, 606 So.2d 1132, 1137-38 (Miss.1992). Only an erroneous admission of evidence that results in prejudice and harm to the opposing party, or adversely affects a substantial right of the party, warrants reversal. Brown v. State, 890 So.2d 901(¶ 39) (Miss.2004).
¶ 15. During Houston's rebuttal testimony, not only were the documents in question admitted into evidence, but Houston testified to their contents, to include Singleton's Flora addresses and the reason he was ticketed. This testimony was introduced without objection and was properly before the jury. We cannot say that actual introduction of the documents Houston referred to during his testimony prejudiced Singleton or adversely affected any substantial right. Therefore, while the NCIC report and justice court printout were erroneously admitted into evidence, they did not prejudice Singleton and, as such, this issue is without merit.
III. THE TRIAL COURT ABUSED HIS DISCRETION BY DENYING SINGLETON'S MOTIONS FOR DIRECTED VERDICT OR MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT OR, IN THE ALTERNATIVE, FAILING TO GRANT A NEW TRIAL.
IV. THE JURY VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE.
A. Motions for Directed Verdict and Motion for Judgment Notwithstanding the Verdict.
¶ 16. The standard of review for denials of a motion for a judgment notwithstanding the verdict and a motion for a directed verdict is the same. Jefferson v. State, 818 So.2d 1099(¶ 30) (Miss. 2002). A motion for directed verdict and judgment notwithstanding the verdict both "challenge the legal sufficiency of the evidence presented at trial." Id. When reviewing the denial of a motion for directed verdict, this Court shall "accept as true all the evidence favorable to the state, together with reasonable inferences arising therefrom, to disregard the evidence favorable to the defendant, and if such evidence would support a verdict of guilty beyond a reasonable doubt, the trial court's denial of the motion must be affirmed." Hayes v. State, 803 So.2d 473(¶ 5) (Miss.Ct.App. 2001). This Court may only discharge the defendant when we conclude, based on the evidence viewed in a light most favorable to the verdict, that "no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." Ashford v. State, 583 So.2d 1279, 1281 (Miss.1991). Under this review, the central issue is "whether the evidence shows `beyond a reasonable doubt that the accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.'" Flora v. State, 925 So.2d 797(¶ 82) (Miss. 2006) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). However, this Court is not required to inquire whether it is satisfied that the evidence presented at trial established that the defendant was guilty beyond a reasonable doubt. Dilworth v. State, 909 So.2d 731, 736(¶ 17) (Miss.2005). Mississippi Code Annotated Section 41-29-139(a) states, "[I]t is unlawful for any person knowingly or intentionally: (1) To sell, barter, transfer, manufacture, distribute, dispense or possess with intent to sell, *473 barter, transfer, manufacture, distribute or dispense, a controlled substance." Miss. Code. Ann. § 41-29-139(a)(1) (Rev.2005).
¶ 17. It is clear from the record that Jackson did not have drugs on his person when he entered Doris's house. It is also clear that he did have drugs when he left her house. The tape indicated that he purchased the drugs from a male individual in Doris's home and Jackson specifically identified Singleton in court as the dealer. However, no one else saw Singleton and he was not at the home when Houston and other law enforcement personnel returned to arrest him.
¶ 18. There was testimony from Wilbert Malone, Doris's live-in boyfriend, that Jackson came to the Pugh Road house when Singleton was not there, but the conversation that took place between Malone and Jackson does not match, in any way, what was captured upon the audiotape on December 10. Also, Malone testified that he could not remember the actual day that Jackson came to the house but did remember that Jackson's visit was at night. Jackson testified that he had visited Doris's home once before the December 10 drug sale to make a purchase of his own, but was sure that the December 10 buy was made during the day.
¶ 19. Singleton testified that he was not at his mother's house that day, did not sell Jackson any drugs, and had never sold drugs. The jury was left with the facts that a drug deal took place in Doris's home and involved Jackson and another individual. They were told by Jackson that Singleton was the dealer, and told by Singleton that he was not there. They heard the tape containing the voices of Jackson and the dealer, and heard the voice of Singleton when he testified. Accepting as true all evidence favorable to the State and disregarding any evidence favorable to Singleton, we cannot say that the trial court erred in denying Singleton's motions for directed verdict or JNOV.
B. Motion for New Trial and whether the verdict was against the overwhelming weight of the evidence.
¶ 20. "As distinguished from a JNOV, a motion for a new trial asks to vacate the judgment on grounds related to the weight, not sufficiency, of the evidence." Smith v. State, 802 So.2d 82(¶ 11) (Miss.2001). The appropriate standard of review of a denial of a new trial or a claim that a conviction was against the overwhelming weight of the evidence has been stated as follows:
[A reviewing court] must "accept as true the evidence which supports the verdict and will reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." A new trial will not be ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an "unconscionable injustice."
Id. (quoting Crawford v. State, 754 So.2d 1211(¶ 30) (Miss.2000)).
¶ 21. After a careful review of the record we cannot say that the trial court abused its discretion in denying Singleton's request for a new trial as the overwhelming weight of the evidence is not so contrary to the verdict as to constitute an "unconscionable injustice."
¶ 22. THE JUDGMENT OF THE CIRCUIT COURT OF MADISON COUNTY OF CONVICTION OF SALE OF COCAINE, A SCHEDULE II CONTROLLED SUBSTANCE WITHIN 1,500 FEET OF A CHURCH AND SENTENCE OF SIXTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THIRTY-FIVE YEARS SUSPENDED, *474 IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE AND MYERS, P.JJ., IRVING, CHANDLER, GRIFFIS, BARNES AND ISHEE, JJ., CONCUR. KING, C.J., CONCURS IN RESULT ONLY. CARLTON, J., NOT PARTICIPATING.