# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2015-KA-00818-COA

DWIGHT NELSON A/K/A PETER                                    APPELLANT

v.

STATE OF MISSISSIPPI                                         APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 05/01/2015 |
| TRIAL JUDGE: | HON. EDDIE H. BOWEN |
| COURT FROM WHICH APPEALED: | SIMPSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | WARREN LOUIS MARTIN JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: ALICIA MARIE AINSWORTH |
| | JASON L. DAVIS |
| DISTRICT ATTORNEY: | DANIEL CHRISTOPHER JONES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF COUNT I, SEXUAL BATTERY, AND SENTENCED TO LIFE; AND COUNT II, TOUCHING A CHILD FOR LUSTFUL PURPOSES, AND SENTENCED TO TEN YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE, PROBATION, OR EARLY RELEASE |
| DISPOSITION: | AFFIRMED - 04/04/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE LEE, C.J., GREENLEE AND WESTBROOKS, JJ.**

**WESTBROOKS, J., FOR THE COURT:**

¶1.     Dwight Nelson was convicted in the Circuit Court of Simpson County of sexual battery and touching a child for lustful purposes. Nelson was sentenced to serve life in prison for sexual battery and ten years for gratification of lust. His sentences were ordered

to run consecutively. After the denial of his post-trial motion, Nelson timely filed his notice of appeal. On appeal, he raises several issues. Finding no error, we affirm the circuit court's judgment.

## FACTS AND PROCEDURAL HISTORY

¶2. On April 7, 2014, J.S.[1] informed her mother, Courtney Sumrell, that she had been raped by her "Uncle Peter." At the time, J.S. was ten years old. Nelson is sometimes called "Peter" by his family. Nelson is Sumrell's uncle, who had been staying with Sumrell's aunt, Hazel Nelson, during the time of the abuse. J.S. and Sumrell lived with Teresa Arrington, Sumrell's mother. Arrington lived next door during the time of the abuse. Sumrell took J.S. to the police station the same night J.S. reported the abuse. The police informed Sumrell to take her daughter to Simpson General Hospital for further examination. No scars, tearing, or torn hymen was found during J.S.'s examination. Upon further investigation, Nelson was arrested and charged with sexual battery and touching a child for lustful purposes.

¶3. At trial, J.S. testified Nelson started sexually abusing her when she was six or seven years old, until she was ten years old. During her forensic interview, J.S. described the sexual acts performed on her by Nelson. She described how his affection turned from tickling to something more. J.S. gave details about Nelson rubbing his "private" on her "private." J.S. stated Nelson would put "grease" on his penis before penetrating her. J.S. stated the last time the sexual abuse occurred was a little before Thanksgiving break, in 2013,

---

[1] To protect the child's identity, we have used her initials in place of her name.

2

although the record shows the abuse could have also occurred between the Thanksgiving and Christmas breaks in 2013 at her grandmother's house. During their last encounter, J.S. said Nelson put a piece of wood behind his door so that no one could enter his room. She stated Nelson pulled her pants down and lay on top of her. She said it hurt her stomach, because he put his weight on her. J.S. stated Nelson's "private" went inside her "private," and something "wet and clear-white" came out of Nelson's "private." Additionally, she stated when he finished, Nelson took a rag and wiped himself.

¶4. Following trial, Nelson was convicted in the Circuit Court of Simpson County of sexual battery and touching a child for lustful purposes. Nelson was sentenced to serve life in prison for sexual battery and ten years for gratification of lust, with the sentences to run consecutively and without eligibility for parole, probation, or early release. After the denial of his post-trial motions, Nelson timely filed his notice of appeal.[2]

## DISCUSSION

### I. Ineffective Assistance of Counsel

¶5. "To prove ineffective assistance of counsel, [one] must show that: (1) his counsel's performance was deficient, and (2) this deficiency prejudiced his defense." *Jackson v. State*, 73 So. 3d 1176, 1181 (¶19) (Miss. Ct. App. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "We only consider an ineffective-assistance-of-counsel claim on direct

---

[2] After his trial, Nelson filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. Though the record does not reflect a ruling on this motion, both parties concede Nelson's motion was denied verbally. This appeal followed.

appeal when: '(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.'" *Webb v. State*, 113 So. 3d 592, 602 (¶41) (Miss. Ct. App. 2012) (citation omitted). However, "[i]f this Court does not reverse on other grounds and is unable to conclude that the defendant received ineffective assistance of counsel, it should affirm without prejudice to the defendant's right to raise the ineffective assistance of counsel issue via appropriate post-conviction proceedings." *Collins v. State*, 70 So. 3d 1144, 1148 (¶17) (Miss. Ct. App. 2011) (citation and quotation marks omitted). "Review on direct appeal of an ineffective-assistance-of-counsel claim is confined strictly to the record." *Id*.

¶6. In *Webb*, this court did not address the merits of Webb's claims—particularly Webb's claim that "his counsel did not adequately object to the hearsay witnesses." *Webb*, 113 So. 3d at 602 (¶41). While Webb stipulated the record was adequate, the State did not. *Id*. "With no stipulation by both parties and no apparent 'ineffectiveness of constitutional dimensions' in the trial record," the court did "not address the merits of Webb's claims." *Id*.

¶7. In this case, with no stipulation by the parties, we address the adequacy of the record. Nelson contends his trial counsel was ineffective, because counsel did not make any contemporaneous objections at trial. However, Nelson's counsel presented four witnesses and provided the jury with a possible defense. Also, Nelson contends that his trial counsel

failed to conduct a proper investigation into his case. Nelson's counsel did not present any testimony from a treating physician to aid in Nelson's assertion that he was incapacitated due to back surgery. Counsel did not submit medical records. And counsel mentioned Nelson was a truck driver, but did not submit any date to provide Nelson with a possible alibi during the time J.S. said the abuse occurred. "Counsel's choice[s] of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy" and will not stand as support for an ineffective-assistance-of-counsel claim. *Hancock v. State*, 964 So. 2d 1167, 1175 (¶18) (Miss. Ct. App. 2007) (citation omitted).

¶8. Despite Nelson's arguments, we find nothing in the record to affirmatively show Nelson received ineffective assistance of counsel. *See Webb*, 113 So. 3d at 602 (¶41). Accordingly, the issue of ineffective assistance of counsel would be more appropriate via postconviction proceedings.

## II. Motion for New Trial

¶9. "As distinguished from a JNOV [motion], a motion for a new trial asks to vacate the judgment on grounds related to the weight, not sufficiency, of the evidence." *Singleton v. State*, 948 So. 2d 465, 473 (¶20) (Miss. Ct. App. 2007) (citation omitted). The appropriate standard of review for a denial of a new trial requires the appellate court to "accept as true the evidence which supports the verdict and [to] reverse only when convinced that the circuit court has abused its discretion in failing to grant a new trial." *Id*. "A new trial will not be

5

ordered unless the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an 'unconscionable injustice.'" *Id*.

¶10. At Nelson's trial, the State presented testimony from J.S, her mother, a nurse practitioner, and a forensic interviewer. The testimony from these witnesses supported J.S.'s assertion that she had been sexually abused by Nelson. Nelson had the opportunity to cross-examine each witness. To aid in his defense, Nelson submitted testimony from his two sisters, his brother, and his mother. Those witnesses testified they did not see any signs of inappropriate behavior and could not believe Nelson was capable of such inappropriate behavior. After a careful review of the evidence and record, we find the trial court did not err in denying Nelson's motion for a new trial. The verdict is not so contrary to the overwhelming weight of the evidence that allowing the verdict to stand would sanction an unconscionable injustice.

### III.     Sufficiency of Indictment

¶11. Uniform Circuit and County Court Rule 7.06 requires that an indictment "fully notify the defendant of the nature and cause of the accusation." This rule also requires that an indictment include, among other things, "[t]he date, and if applicable, the time at which the offense was alleged to have been committed. Failure to state the correct date shall not render the indictment insufficient . . . . " URCCC 7.06(5). *Brown v. State*, 983 So. 2d 1059, 1062 (¶10) (Miss. Ct. App. 2008) (citation omitted). Moreover, "the [Mississippi] Supreme Court has held, 'a specific date in a child sexual abuse case is not required so long as the defendant

6

is fully and fairly advised of the charge against him.'" *Brown,* 983 So. 2d at 1063 (¶14) (quoting *Eakes v. State*, 665 So. 2d 852, 860 (Miss. 1995)).

¶12.   Nelson contends his indictment was defective, because it did not set forth specific dates of the alleged incidents as required by law. We disagree. Nelson offered testimony in direct contradiction to the victim's assertion that Nelson was able to commit sexual battery during that time. Witnesses testified Nelson was incapacitated during the time of the abuse because of his back surgery.

¶13.   We find the indictment's lack of specificity did not prejudice Nelson's ability to establish his defense.

### IV.   Testimony Under Tender-Years Exception

¶14.   "We review for abuse of discretion a party's claim that the circuit court erred by admitting hearsay." *Mason v. State*, 203 So. 3d 732, 738 (¶26) (Miss. Ct. App. 2016) (citation omitted).

¶15.   Under Mississippi Rule of Evidence 803(25), the "tender-years exception" to the hearsay rule, a witness may testify about statements made "by a child of tender years describing any act of sexual contact with or by another." "Before admitting this testimony, the trial judge must conduct a hearing outside the jury's presence and make two findings—(1) the child was of tender years when she made the statement, and (2) the statement has substantial indicia of reliability." *Webb*, 113 So. 3d at 595 (¶1).

¶16.   There are twelve factors the trial court should consider on the record when

determining whether substantial indicia of reliability exist. These factors are as follows:

> (1) whether there is an apparent motive on declarant's part to lie; (2) the general character of the declarant; (3) whether more than one person heard the statements; (4) whether the statements were made spontaneously; (5) the timing of the declarations; (6) the relationship between the declarant and the witness; (7) the possibility of the declarant's faulty recollection is remote; (8) certainty that the statements were made; (9) the credibility of the person testifying about the statements; (10) the age or maturity of the declarant; (11) whether suggestive techniques were used in eliciting the statement; and (12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

M.R.E. 803(25) advisory committee's note. The trial court conducted a brief analysis of J.S.'s testimony using each factor during the tender-years hearing. The trial court determined that J.S. was a child of tender years, and that her statements to the nurse practitioner and forensic interviewer had substantial indicia of reliability.

¶17. Nelson claims that J.S.'s testimony is unreliable, because of the inconsistencies regarding the time of the sexual abuse. We disagree. J.S. stated the last sexual encounter occurred either before Thanksgiving break 2013 or between the Thanksgiving and Christmas breaks in 2013. However, her story of the abuse did not change. J.S. described, in detail, their sexual contact. We find her testimony and statements made to the nurse practitioner and forensic interviewer both credible and reliable.

¶18. Accordingly, we find the trial court did not abuse its discretion by allowing the testimony of the nurse practitioner, forensic interviewer, or J.S.

## V. Expert Witnesses and *Daubert* Challenge

¶19. "The [United States Supreme] Court in *Daubert* adopted a non-exhaustive, illustrative

list of reliability factors for determining the admissibility of expert witness testimony." *Carter v. State*, 996 So. 2d 112, 116 (¶14) (Miss. Ct. App. 2008) (quoting *Miss. Trans. Comm'n v. McLemore,* 863 So. 2d 31, 36-37 (¶13) (Miss. 2003) (citing *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. at 579, 592-94 (1993))). "The focus of this analysis must be solely on principles and methodology, not on the conclusions they generate." *Id.* (quotation marks omitted).

> These factors include whether the theory or technique can be and has been tested; whether it has been subjected to peer review and publication; whether, in respect to a particular technique, there is a high known or potential rate of error; whether there are standards controlling the technique's operation; and whether the theory or technique enjoys general acceptance within a relevant scientific community.

*Id.* "The applicability of these factors depends on the nature of the issue, the expert's particular expertise, and the subject of the testimony." *Id.* "Before a qualified expert's opinion may be received, it must rise above mere speculation." *Williams v. State*, 35 So. 3d 480, 486 (¶19) (Miss. 2010) (citation omitted).

¶20. Nelson contends the trial court erred in allowing the testimony of the State's expert witnesses, because neither of them met the qualifications outlined in *Daubert*. Notwithstanding the procedural bar, we find no error in the trial court admitting expert testimony provided by the nurse practitioner and the forensic interviewer. Moreover, Nelson did not offer a single objection to the trial court when both the nurse practitioner and the forensic interviewer were proffered as expert witnesses.

¶21. "Where a party fails to object to the admission of expert testimony during trial, the

9

appellate court reviews the decision to admit that evidence for plain error." *Univ. of Miss. Med. Ctr. v. Peacock*, 972 So. 2d 619, 625 (¶14) (Miss. Ct. App. 2006) (citing *United States v. Mornan*, 413 F.3d 372, 379 (3rd Cir. 2005); *Rushing v. Kansas City S. Ry.*, 185 F.3d 496, 506 (5th Cir. 1999) (superseded on other grounds) ("failure to object to expert testimony forfeits the objection, precluding full review on appeal")). "Deference to the trial judge's determination of the reliability of expert testimony is particularly warranted where the defendant does not object to the admissibility of the expert's testimony." *Id*.

¶22. Regan Doleac is a certified pediatric sexual assault nurse examiner. She has performed a little over one thousand examinations on children. She also has the background and education to be qualified as an expert in her field. Nelson had no objection to Doleac being qualified as an expert. Doleac explained physical exams do not always elicit evidence, and absence of a torn hymen does not negate the fact that sexual abuse or intercourse has occurred.

¶23. Rachel Daniels, the forensic interviewer and social worker, is trained to interview children to learn how they communicate. During the interview she conducted with J.S., Daniels stated J.S. indicated there were several instances of sexual contact between her and Nelson. Daniels stated J.S. had trouble remembering dates of the incidents, but that was common for a child of J.S.'s age.

¶24. Accordingly, we find no error in trial court's decision to admit the testimony of the forensic interviewer.

## VI.    Jury Instruction S-5

¶25.    "It is well settled that jury instructions generally are within the discretion of the trial court, so the standard of review for the denial of jury instructions is abuse of discretion." *Sanders v. State*, 77 So. 3d 497, 502 (¶19) (Miss. Ct. App. 2011), *aff'd but criticized on other grounds*, 77 So. 3d 484 (Miss. 2012) (citation omitted).  "Furthermore, the instructions actually given must be read as a whole."  *Id*. (quotation marks omitted).  "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found."  *Id*.

¶26.    Nelson asserts the trial court erred in granting an instruction given by the State, because the instruction contained a dictionary definition of the term "licentious."  We find this assignment of error is without merit.  The trial court properly granted the instruction to give a clear definition of the word "licentious," to be read in conjunction with the jury instruction regarding "touching of a child for lustful purposes."

## VII.    Motion for Directed Verdict or JNOV

¶27.    The standards of review for denials of motions for judgments notwithstanding the verdict and directed verdicts are the same.  *Singleton*, 948 So. 2d at 472 (¶16) (citation omitted).  Both motions "challenge the legal sufficiency of the evidence presented at trial." *Id*. On review, this Court "accept[s] as true all the evidence favorable to the [S]tate, together with reasonable inferences arising therefrom, [and] disregard[s] the evidence favorable to the defendant, and if such evidence would support a verdict of guilty beyond a reasonable doubt,

11

the trial court's denial of the motion must be affirmed." *Id*. "This Court may only discharge the defendant when we conclude, based on the evidence viewed in [the] light most favorable to the [State], that no reasonable, hypothetical juror could find beyond a reasonable doubt that the defendant was guilty." *Id*. (quotation marks omitted). "However, this Court is not required to inquire whether it is satisfied that the evidence presented at trial established that the defendant was guilty beyond a reasonable doubt." *Id.*

¶28. This Court finds the evidence presented legally sufficient to obtain a guilty verdict against Nelson. The testimony of J.S., her mother, and two experts was such that a reasonable, hypothetical juror could find beyond a reasonable doubt that Nelson was guilty. Therefore, we find no error in the trial court's denial of the Nelson's motions for a directed verdict and a JNOV.

### VIII. Excessive Sentence

¶29. "In order for an error related to improper sentencing to be preserved for appeal, there must be an objection made at trial." *Hobgood v. State*, 926 So. 2d 847, 857 (¶34) (Miss. 2006) (citations omitted). In *Hobgood*, the appellant was procedurally barred from raising the issue of improper sentencing on appeal. *Id*.

¶30. Nelson asserts the sentence imposed upon him is excessive and violates his rights. We disagree. Also, no objection regarding an improper sentence was made at his sentencing hearing. Therefore, this Court finds Nelson is procedurally barred from raising this issue on appeal for the first time. Accordingly, we find no error with the judgment of the trial court

12

and affirm.

¶31. **THE JUDGMENT OF THE SIMPSON COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SEXUAL BATTERY, AND SENTENCE OF LIFE; AND COUNT II, TOUCHING A CHILD FOR LUSTFUL PURPOSES, AND SENTENCE OF TEN YEARS, WITH THE SENTENCES TO RUN CONSECUTIVELY IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT ELIGIBILITY FOR PAROLE, PROBATION, OR EARLY RELEASE, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, FAIR, WILSON AND GREENLEE, JJ., CONCUR.**