IN RE INTEREST OF B.R. ET AL., CHILDREN
UNDER 18 YEARS OF AGE.
STATE OF NEBRASKA, APPELLEE, V. BILLY B.,
APPELLANT, AND CRYSTAL B., APPELLEE.
708 N.W.2d 586

Filed December 2, 2005.   No. S-05-063.

David A. Fournier, of Fournier Law Office, for appellant.

Stuart J. Dornan, Douglas County Attorney, Nicole Brundo Goaley, and Carrie Ferguson, Senior Certified Law Student, for appellee State of Nebraska.

HENDRY, C.J., WRIGHT, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

McCORMACK, J.
## NATURE OF CASE
Billy B. appeals the December 23, 2004, order of the separate juvenile court of Douglas County, adjudicating B.R., E.B., and N.B. to be juveniles within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2004) in that they lacked proper parental care by reason of the fault and habits of Billy. Billy argues that certain testimonial evidence presented at the adjudication hearing was inadmissible hearsay. He also argues that the evidence did not support the adjudication of the children based on the supplemental petition and that the court erred by denying his motion for summary judgment.

## BACKGROUND
Billy is the stepfather of B.R., born September 3, 1999, and the natural father of E.B., born August 17, 2001, and N.B., born

June 27, 2003. On March 19, 2004, the State of Nebraska filed a petition in the juvenile court alleging that the children are within the meaning of § 43-247(3)(a) by reason of the faults and habits of Billy and his wife, Crystal B.

Thereafter, the State filed a two-count supplemental petition. The supplemental petition alleged that the children were within the meaning of § 43-247(3)(a) by reason of the fault and habits of Billy, in that Billy had subjected B.R. to inappropriate sexual contact, placing the children at risk of harm. Billy entered a denial as to the supplemental petition. The State then filed a second supplemental petition. This petition alleged that the minor children were within the meaning of § 43-247(3)(a) by reason of Billy's use of alcohol and/or controlled substances. Billy entered an admission to the second supplemental petition.

In December 2004, the adjudication of the supplemental petition and second supplemental petition came before the juvenile court. Also before the court were the disposition and permanency planning on the original petition regarding Billy and Crystal, as well as the immediate disposition on the second supplemental petition with regard to Billy. At the hearing, the State presented testimonial evidence regarding the alleged sexual abuse of B.R.

ALLEGED SEXUAL ABUSE TESTIMONY

Ellen Rupp, a pediatrician at Boys Town National Research Hospital, testified that she conducted an examination of B.R. and E.B. in response to issues that the girls' foster family had expressed concerning sexualized behavior by B.R. at the foster home. Rupp testified that according to the foster family, B.R. would "hump" other children, refer to sex acts, and touch her private parts frequently in public and in private. Rupp testified that E.B. also demonstrated some of these behaviors, but she more often complained of pain, particularly at night, and would sometimes awaken complaining of pain. No objection was made regarding this testimony. Rupp testified that during her examination of B.R., she noticed that B.R.'s hymen was thickened. She explained that the thickening of the hymen can be the result of trauma, such as scratches from fingers or something being inserted into the vagina. However, it can also result from getting

estrogens in the diet, such as hormonally treated meat, certain kinds of plastic, and eating birth control pills. Although the latter causes are unusual, Rupp testified that recently, they are not that uncommon. Rupp further testified that based on observations made during the physical examination, she could not say with a reasonable degree of medical certainty whether B.R. had been sexually abused. She did, however, request that B.R. and E.B. be seen at "Project Harmony," a facility which provides services to suspected victims of child abuse.

LaJean Henry, a licensed foster parent who fostered the children in her home on or about March 19, 2004, for about 30 days as an emergency placement, also testified. Henry testified that she had observed B.R. "humping" E.B. and that the girls would kiss each other on the mouth. Henry testified that she had discussed with B.R. good touching and bad touching and that B.R. had indicated that she had experienced bad touching. Specifically, Henry testified that B.R. told her that "somebody put their pinkie in her." Henry believed that the "somebody" B.R. was referring to was Billy.

Testimony was also received from Sheryl Overby, a therapist with Lutheran Family Services. Overby began seeing B.R. in May 2004, and at the time of the adjudication hearing, she had conducted approximately 23 therapy sessions with B.R. Overby testified that during the course of their sessions, B.R. made several references to her "daddy" touching her genitalia and had stated that she touched her "daddy's pee-pee."

On cross-examination, Overby testified that she had four sessions with B.R. before B.R. made any reference to any kind of touching and that during 18 or 19 of their sessions, B.R. did not mention any type of sexual abuse. She also testified that B.R. had made no reference to sexual abuse prior to Overby's introducing a book about sexual abuse and that questions about sexual abuse had been introduced into therapy for the purpose of eliciting information.

In addition, Billy and Crystal were each called to testify. When Crystal was asked if Billy had inappropriately touched B.R. or E.B., she invoked her Fifth Amendment constitutional right against self-incrimination. When Billy was asked if he had ever inappropriately touched the girls, he testified that he had not.

## HEARSAY TESTIMONY

Overby also testified regarding conduct that had been relayed to her by the children's foster mother. Specifically, Overby testified the foster mother reported that either B.R. or E.B. had put her mouth on the other's genital area when the children were not dressed and that the girls had been kissing each other with their tongues. Counsel for Billy twice objected to the testimony of Overby regarding observations relayed to her by the foster mother as hearsay. The court overruled Billy's objections under the medical diagnosis exception to hearsay. Overby then went on to testify, without objection, the foster mother had reported that B.R. did not want her foster father to read her a story in bed and that E.B. and N.B. became very tense with their legs when the foster mother attempted to clean their genital areas. Overby opined that this behavior is consistent with sexual abuse. However, she stated that the behavior was also consistent with trauma and that being placed in foster care is enough of a trauma for some children to exhibit such behaviors.

On December 23, 2004, the juvenile court entered an order adjudicating the children on the second supplemental petition. With regard to the disposition on the original petition and second supplemental petition, the court ordered that the children remain in the custody of the Nebraska Department of Health and Human Services and the court set forth a rehabilitative plan to correct, eliminate, or ameliorate the situation or condition on which adjudication was obtained. The juvenile court also adjudicated the children based on the supplemental petition. The court found that the State's evidence was probative, that the witnesses were credible and reliable, and that the counts contained in the supplemental petition were true based on a preponderance of the evidence. Disposition on the supplemental petition was not determined at that time. Rather, disposition on the supplemental petition was scheduled for hearing on a later date. Billy timely appealed the juvenile court's December 23 order.

## ASSIGNMENTS OF ERROR

Billy assigns, restated, that the juvenile court erred in (1) allowing the testimony of Overby over his objections, (2) denying his motion for summary judgment, and (3) finding that the

allegations set forth in the supplemental petition were true by a preponderance of the evidence.

## STANDARD OF REVIEW

■ Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004).

■ In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make such discretion a factor in determining admissibility. Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, the admissibility of evidence is reviewed for an abuse of discretion. *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004).

## ANALYSIS

### MEDICAL DIAGNOSIS AND TREATMENT
### EXCEPTION TO HEARSAY TESTIMONY

Pursuant to Neb. Rev. Stat. § 27-803(3) (Cum. Supp. 2004), the juvenile court admitted the testimony of Overby regarding observations relayed by B.R.'s foster mother to Overby, who was B.R.'s therapist, that one of the girls put her mouth on the other girl's private parts or genitalia. Billy objected to this testimony on the basis of hearsay, which objection was overruled. Billy claims that this testimony does not fall within the § 27-803(3) exception because the exception applies only to statements made by a declarant patient, not to statements made by a third party. We disagree.

Section 27-803(3) provides an exception to the hearsay rule, regardless of the availability of the declarant, for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to

diagnosis or treatment." This exception is identical to Fed. R. Evid. 803(4).

■ Although the heart of this exception lies in statements made by a patient to a treating physician, the exception casts its net wider than the patient-physician relationship. Under the federal and Nebraska rules of evidence, statements admissible under the medical diagnosis and treatment exception are not restricted to statements made by the patient and the statements need not be made to a physician. *Vacanti v. Master Electronics Corp.*, 245 Neb. 586, 514 N.W.2d 319 (1994); 2 McCormick on Evidence § 277 (John W. Strong et al., 5th ed. 1999). As a general rule, the exception applies to persons seeking medical assistance from persons who are expected to provide some form of health care. *Vacanti v. Master Electronics Corp., supra.* Thus, "[t]he declarant need not be the patient—need not be the person who is experiencing the symptoms to be diagnosed or treated. In other words, the statement need not refer to the declarant's own symptoms." G. Michael Fenner, The Hearsay Rule 202 (2003).

We conclude that the statements made by B.R.'s foster mother were admissible under § 27-803(3). B.R.'s foster mother observed first hand the conduct she subsequently described to Overby. The fact that the statements in question came from the patient's foster mother, not the patient herself, does not preclude their admissibility under § 27-803(3), as long as the evidence satisfactorily demonstrates that the circumstances under which the statements were made were such that the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment, that the declarant's statements were reasonably pertinent to such diagnosis or treatment, and further, that a doctor would reasonably rely on such statements. See *State v. Vaught*, 268 Neb. 316, 682 N.W.2d 284 (2004).

The record reflects that B.R. began seeing Overby in May 2004 for foster care adjustment purposes. Based on B.R.'s behavior in her foster home, concerns arose that B.R. had been sexually abused. Clearly, evidence that B.R. had been sexually abused was important to her medical diagnosis and psychological treatment, and therefore, information relating to that possibility was properly admitted under § 27-803(3). Hence, we conclude that Overby's testimony was admissible under § 27-803(3).

## Motion for Summary Judgment

■ Billy argues that the juvenile court erred in denying what he terms his motion for summary judgment made at the close of the State's case. We need not address whether the standard for summary judgment had been met because a juvenile court does not have the power to grant summary judgment. *In re Interest of Jaden H.*, 263 Neb. 129, 638 N.W.2d 867 (2002). Based upon its substance, we treat Billy's motion as a motion to dismiss at the close of the State's evidence. The juvenile court overruled the motion, and Billy proceeded to present his case. A defendant who, after the overruling of a motion for dismissal made at the close of the plaintiff's evidence, adduces evidence on its own behalf waives any error on the motion for dismissal. *Home Pride Foods v. Johnson*, 262 Neb. 701, 634 N.W.2d 774 (2001).

## Supplemental Petition

Finally, Billy argues that the court erred in finding that the allegations contained in the supplemental petition were true by a preponderance of the evidence.

■ In order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. See *In re Interest of Heather R. et al.*, 269 Neb. 653, 694 N.W.2d 659 (2005). The court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Corey P. et al.*, 269 Neb. 925, 697 N.W.2d 647 (2005).

The supplemental petition alleged that Billy is the stepfather of B.R. and the natural father of E.B. and N.B. The parties stipulated to this allegation. The supplemental petition alleged that the children came within the meaning of § 43-247(3)(a), lacking proper parental care by reason of the fault or habits of Billy in that Billy subjected B.R. to inappropriate sexual contact, placing the children at risk of harm.

At the adjudication hearing, the State presented evidence regarding B.R.'s sexualized behavior in her foster home. B.R.'s therapist opined that this behavior indicated prior sexual abuse. Evidence was also presented regarding allegations made by B.R. that her "daddy" had inappropriately touched her.

Billy testified that he had never inappropriately touched B.R. or E.B. However, we give deference to the juvenile court's decision to reject Billy's testimony on this matter. See *In re Interest of Corey P. et al., supra.* When the evidence is in conflict in a juvenile case, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. *Id.*

Reviewing the evidence in its totality, we conclude that the record supports the finding that the allegations contained in the supplemental petition are true and that the children come within the meaning of § 43-247(3)(a).

## CONCLUSION

We conclude that Overby's testimony describing B.R.'s conduct, which was relayed to her by B.R.'s foster mother, was admissible under § 27-803(3). We further conclude that the juvenile court did not err in overruling Billy's motion to dismiss at the close of the State's evidence and that the court properly found that the allegations contained in the supplemental petition were true by a preponderance of the evidence.

AFFIRMED.

CONNOLLY, J., participating on briefs.