738 N.W.2d 858 (2007)
15 Neb. App. 847
In re Interest of EMILY C., a child under 18 years of age.
State of Nebraska, appellee,
v.
Nebraska Department of Health and Human Services, appellant.
No. A-06-1408.
Court of Appeals of Nebraska.
July 31, 2007.
*859 Jon Bruning, Attorney General, and B. Gail Steen, Special Assistant Attorney General, for appellant.
Gary Lacey, Lancaster County Attorney, Alicia B. Henderson, and Henry L. Wiedrich, Senior Certified Law Student, for appellee.
IRWIN, SIEVERS, and CASSEL, Judges.
SIEVERS, Judge.
The Nebraska Department of Health and Human Services (DHHS) appeals the decision of the Juvenile Review Panel affirming the decision of the separate juvenile court of Lancaster County continuing its jurisdiction over Emily C. after the juvenile court found that she is at risk to become truant if released from the Youth Rehabilitation and Treatment Center-Geneva (YRTC). DHHS contends that the juvenile court erred in not terminating its jurisdiction. We disagree and therefore affirm.

FACTUAL AND PROCEDURAL BACKGROUND
On November 23, 2005, the juvenile court entered an order adjudicating Emily as a child within the meaning of Neb.Rev. Stat. § 43-247(3)(b) (Reissue 2004)habitually truant from home or schoolafter she pled no contest to the allegations of the petition. Although, such petition is not in our record. The juvenile court found that the allegations of the petition were true beyond a reasonable doubt and that Emily was a child less than 16 years of age who was habitually truant from school, having been truant from school on all or parts of the following dates in 2005: September 1; October 5, 6, 10, 11, 12, 13, 14, and 17; and November 4 and 7.
After a disposition hearing, which does not appear in our record, the juvenile court entered an order on February 16, 2006, which disapproved the DHHS plan to terminate the court's jurisdiction, finding such plan to be contrary to Emily's best interests. The juvenile court placed temporary legal custody of Emily with DHHS for placement, treatment, and care at Girls and Boys Town. The juvenile court's plan ordered that Emily shall cooperate with her placement at Girls and Boys Town; that Emily shall attend school on a regular basis; that DHHS, school personnel, and all other service providers working with the family shall exchange information related to the development or evaluation of a *860 plan to correct the conditions resulting in the adjudication; that Emily shall have no tardies or truancies; and that Emily shall cooperate with counseling.
A review hearing was held on April 5, 2006, although the content of such hearing does not appear in our record. The juvenile court disapproved the DHHS plan to terminate the court's jurisdiction and found that the prior plan, as ordered by the juvenile court, was in Emily's best interests. The juvenile court ordered that temporary legal custody of Emily be placed with DHHS, subject to the plan as ordered by the court. The juvenile court's plan ordered that Emily shall cooperate with her placement; that Emily shall attend school on a regular basis; that DHHS, school personnel, and all other service providers working with the family shall exchange information related to the development or evaluation of a plan to correct the conditions resulting in the adjudication; that Emily shall have no tardies or truancies; and that Emily shall cooperate with counseling.
A review hearing was held on August 4, 2006. At the hearing, DHHS called Richard Wehland, the YRTC principal, to testify because Emily was committed to YRTC in mid-April 2006. Wehland testified that over the summer, Emily was enrolled in three classesan art class, a food class, and a music class. Emily fully attended all classes, passed such classes, and received 9 credit hours. The summer session was the first schooling she participated in at YRTC. Wehland testified that Emily was enrolled for seven classes in the fall. Wehland also testified as to the school's policy regarding attendance for students at YRTC. He stated that they are required to attend and that if, for whatever reason, they are not attending, they are expected to make up their work. He further stated that if they are in separation status, the teacher will go to them every day, take assignments to them, and pick up completed assignments. Wehland said it would be "[p]retty difficult" for Emily to be truant while she is at YRTC.
Sara Goscha, a supervisor with DHHS, testified that she supervises Emily's caseworker and has also reviewed the file and signed off on the court report. Goscha testified that when Emily was originally found to be truant, she had missed approximately 9 days of school, and that Emily had indicated she missed those days because she "had run." Goscha later stated that Emily had been truant on all or parts of 11 days from September to November 2005. Goscha testified that Emily was committed to YRTC on April 5, 2006. Goscha stated that Emily has been compliant with the YRTC program and is making progress on her objectives, although Emily's goals at YRTC are not meant to deal with her truancies. Goscha stated that Emily has not had any truancies while at YRTC, so that has not been identified as something she needs to work on. Goscha said that two of Emily's goals are working on her anger and listening to authority. Goscha believes that the conditions that led to the juvenile court's taking jurisdiction have been remedied, because Emily has not been truant from school. Goscha also said that once the juvenile court "closes" the truancy case, Emily will still be under an Office of Juvenile Services commitment, and that part of her "Conditions of Liberty" to be in a community-based setting is going to be a full-time school program. The record reflects that Emily is committed to the Office of Juvenile Services under a separate docket and is placed at the YRTC under that case, but our record is not clear as to what the other case is about other than it is due to "her behaviors." According to Goscha, if Emily violates her "Conditions of Liberty," her parole would be revoked and she could go *861 back to YRTC. Goscha also stated that even though Emily is 16 years old, there are no plans to disenroll her from an educational program. Goscha testified that she is asking the juvenile court to terminate its jurisdiction of Emily under the truancy case docket because such would be in Emily's best interests, since she has shown that she can go to school and that she can do that without truancies.
On cross-examination by the State, Goscha gave the following testimony:
Q Now at this point in time, has [DHHS], in its capacity as the custodian, legal custodian of [Emily], done anything to correct [Emily's] truancy problem in a non-structured setting?
A No. She's been in a structured setting.
Q So we have no experience, at this point in time, with how Emily ... will perform as it relates to truancies once she is discharged from the structured setting that is [YRTC], is that right?
A We don't have that information at this time, no. Goscha also stated that when children are not compliant with their "Conditions of Liberty," their parole is not always revoked.
Goscha testified that Emily is refusing to see her parents, even though she has been encouraged to talk to her parents and go through family mediation with her counselor. Goscha stated that Emily has indicated that she feels like she needs to work on herself and that she does not believe she is in a position to work on her family issues. Though no discharge date has been set, once Emily is discharged from YRTC, DHHS hopes to place her with her parents. But, if Emily refuses contact with them, DHHS will have to find an alternative placement.
At the time of closing arguments to the court, Emily's father volunteered that after the court had ordered Emily to be placed at Girls and Boys Town in February 2006, she attended only 1 day of school there and then was on the run for 5 weeks from that facility until she was found. That situation brought her back into court in early April 2006. When Emily's mother and father were asked by the juvenile court if they agreed or disagreed with DHHS' recommendation to close the truancy case, they said they would disagree with the proposal.
The juvenile court disapproved DHHS' recommendation to terminate the court's jurisdiction, finding that "Emily ... has not successfully attended school in an open setting and there is insufficient evidence to demonstrate Emily has corrected the truancy issue. The plan to terminate jurisdiction is contrary to Emily's best interest by [a] preponderance of the evidence." The juvenile court ordered that temporary legal custody of Emily remain with DHHS, subject to the plan as ordered by the court. The juvenile court's plan was the same as set forth in April 2006.
On August 28, 2006, DHHS filed a request for review by the juvenile review panel, see Neb.Rev.Stat. § 43-287.03 (Reissue 2004), alleging that the August 2006 order "directed an implementation of a plan different from the plan prepared by [DHHS] concerning the care, placement, or services to be provided to the minor child, Emily ..., and [DHHS] believes that the Court's order is not in her best interest."
In its order filed November 6, 2006, the juvenile review panel stated that (1) it has not been shown by a preponderance of the evidence that the disposition of the separate juvenile court of Lancaster County was not in Emily's best interests; (2) the truancy situation is solved so long as the juvenile remains placed at the YRTC in Geneva, but the record is clear that such *862 placement will not be indefinite; (3) the state of the relationship between any juvenile and the juvenile's parents has a direct and important connection relative to the likelihood of the juvenile being truant; and (4) the juvenile review panel was mindful of the importance of the benefits to Emily of the juvenile court maintaining involvement and supervision over her, which would not likely occur if Emily were simply in the custody of the Office of Juvenile Services under a parole situation. The juvenile review panel affirmed the August 2006 order of the separate juvenile court, because neither DHHS nor the guardian ad litem was able to show by a preponderance of the evidence that the disposition was not in Emily's best interests. DHHS now appeals.

ASSIGNMENT OF ERROR
DHHS alleges that the juvenile court erred in continuing its jurisdiction of Emily under the truancy case docket.

STANDARD OF REVIEW
Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. When the evidence is in conflict, however, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over the other. In re Interest of B.R. et al., 270 Neb. 685, 708 N.W.2d 586 (2005).

ANALYSIS
In In re Interest of Kevin K., 15 Neb.App. 641, ___ N.W.2d ___ (2007), a truancy case where the mother had signed Kevin out of school pursuant to Neb.Rev. Stat. § 79-201 (Cum.Supp.2006) after he reached age 16 and after his adjudication, this court held that a juvenile court is not required to terminate its jurisdiction over a minor child even when the sole basis for the court's acquiring jurisdiction over the child  truancy  no longer exists, if termination of such jurisdiction is not in the child's best interests. In the instant case, the court acquired jurisdiction over Emily because of her truancy. The simple fact that Emily has not been truant at YRTC is not enough to terminate the court's jurisdiction, because the situation at YRTC makes it nearly impossible for her to be truantattendance is mandatory, and if she fails to attend, her assignments are brought to her. Emily has not yet demonstrated that she can and will successfully attend school in an unstructured setting. Furthermore, Emily's therapy goals do not directly align with her past truancy, but we cannot conclude that her family problems, authority problems, and anger issues being addressed in her therapy are unrelated to her past truancy. It is clearly not in Emily's best interests that the juvenile court terminate its jurisdiction under the truancy case docket. Therefore, the juvenile court did not err in continuing its jurisdiction of Emily under § 43-247(3)(b).
DHHS argues that "the Court [should] not maintain two separate dockets for a juvenile when one of the jurisdictional bases can be managed under the other docket's services." Brief for appellant at 8. Given that the Office of Juvenile Services is part of DHHS, see Neb.Rev.Stat. § 43-404 (Reissue 2004), DHHS is essentially asking this court to render an advisory opinion as to how DHHS should internally manage Emily, which has nothing to do with the specific assignment of error before this courtwhether the juvenile court erred in continuing its jurisdiction of Emily. Therefore, we discuss this argument no further.

CONCLUSION
For the reasons stated above, we find that the juvenile court did not err in continuing *863 its jurisdiction of Emily under § 43-247(3)(b).
Affirmed.