MAXWELL, J.,
for the Court:
¶ 1. Under Mississippi Rule of Evidence 803(25), the “tender-years exception” to the hearsay rule, a witness may testify about statements “made by a child of tender years describing any act of sexual contact performed with or on the child.” Before admitting this testimony, the trial judge must conduct a hearing outside the jury’s presence and make two findings— (1) the child was of tender years when she made the statement, and (2) the statement has substantial indicia of reliability.
¶ 2. At Jeffrey Webb’s trial, Webb’s victim testified that he sexually abused her from the time she was eleven until she was fourteen, ultimately raping her. Ten other witnesses, recounted what the victim had told them about Webb’s abusive acts. On appeal, Webb challenges the testimony of these ten witnesses, which was admitted under the tender-years exception, and claims his convictions of sexual battery, statutory rape, and gratification of lust must be reversed.
¶ B. While the trial judge made the required findings of the victim’s tender age and the reliability of her statements, he did so after hearing from only two of the hearsay witnesses — the eight other witnesses testified without first proffering their testimony in a hearing outside the jury’s presence. Though the appropriate method for evaluating such testimony required an on-the-record proffer of the additional witnesses’ testimony outside the jury’s presence before determining the statements they recounted were reliable, we find the failure to do so here, at most, harmless error. Even absent this testimony, there was strong evidence of Webb’s guilt, which heavily outweighed any prejudice created by not proffering the witnesses’ testimony on the record. We affirm.
Background
¶ 4. One morning at school choir practice, Pierre found fellow high-school freshman Hope crying.[1] When Pierre asked her what was wrong, Hope revealed she had been raped by her mother’s boyfriend, Jeffrey Webb, the day before. Hope had previously confided in Pierre that Webb had been sexually abusing her but begged Pierre not to tell anyone. This time Pierre informed the school counselor, Heather Norton. Norton contacted the Department of Human Services (DHS) and Hope’s mother, Tashanda.
*596 ¶ 5. A forensic interviewer with the Mississippi Child Advocacy Center (MCAC) interviewed Hope. Her taped interview revealed that, starting when Hope was eleven, Webb — who was the father of Hope’s three younger siblings and lived with Hope’s family — began sneaking into Hope’s room at night and rubbing, kissing, and licking her in inappropriate places. Wanting to protect her mother and siblings, Hope kept the sexual abuse from her family. However, she confided in her friend Amber soon after the abuse began. The abuse continued, and when she was thirteen, Hope mentioned it to two other friends, Morgan and Alaya. By the end of the investigation, Hope, who was then fourteen, had described Webb’s three years of sexual abuse to eleven people— including her doctor, a social worker, and the police officer investigating her allegations.
¶ 6. Webb was charged in a three-count indictment with sexual battery, statutory rape, and gratification of lust by fondling a child. And the State sought to offer testimony from the eleven people Hope had told about the sexual abuse. In a pretrial hearing, MCAC interviewer Rachel Daniels testified about Hope’s forensic interview. The interview, which was conducted when Hope was fourteen, concerned the sexual abuse and Hope’s reporting of Webb’s acts. A video of the interview was introduced at the hearing. Hope’s mother, Tashanda, also testified, as did Hope. The trial judge determined: (1) Hope was a child of tender years at the time she made statements about the abuse; and (2) the time, content, and circumstances of her statements provided substantial indicia of reliability. The trial judge found the testimony about Hope’s statements concerning the abuse admissible under Rule 803(25).
¶ 7. At the pretrial hearing, the judge remarked that the State intended to call other witnesses in addition to Tashanda and Daniels to testify about Hope’s disclosures. The judge assured Webb’s counsel he would have an opportunity, prior to these witnesses testifying before, the jury, to (1) conduct voir dire and (2) object based on hearsay. The first morning of trial, prior to jury selection, the judge again discussed with the State and Webb’s counsel how these additional witnesses would be handled. But after the jury was empaneled, apparently there was an off-the-record conference between the judge, the State, and Webb’s counsel. Based on that conference, the judge stated for the record, ‘We initially were going to have the proffer of testimony of various witnesses prior to the beginning of trial. And by agreement of counsel, we’re not going to do so.” (Emphasis added). The judge asked the State and Webb’s counsel, “And is that clear enough for the record for you?” But only the State responded, acknowledging Webb’s “continuing objection” to the hearsay witnesses.
¶ 8. Hope testified at trial. During her testimony, the video of her MCAC interview was introduced and played to the jury. In addition, the State called ten witnesses who recounted Hope’s disclosures about Webb’s sexual abuse.[2]
*597 ¶ 9. The State also called Dr. Darden North, the gynecologist who treated Hope when she was fourteen. Dr. North testified Hope’s hymen had been torn, indicating sexual intercourse, and repeated Hope’s and Tashanda’s statements that Webb had forced intercourse with Hope. Additionally, Sergeant Jeff Myers of the JPD testified about Webb’s investigation, and DNA analyst Kathryn Moyse testified about the physical evidence. (Neither Sergeant Myers’s nor Moyse’s testimony is challenged on appeal.)
¶ 10. The jury found Webb guilty of sexual battery, statutory rape, and gratification of lust. The Hinds County Circuit Court sentenced Webb to consecutive sentences of thirty years, thirty years, and fifteen years, respectively. Webb timely appealed.
Discussion
¶ 11. All of Webb’s issues on appeal— (1) the allegedly inadmissible and cumulative hearsay, (2) the challenge to the weight of the evidence, and (3) the allegations of ineffective assistance of counsel— are based on the admission of the corroborative witnesses’ testimony. We acknowledge their testimony recounting what Hope told them about Webb’s sexual abuse (and, in Dr. North’s case, what Tashanda also told him), offered by, the State to prove Webb had in fact abused Hope, was undoubtedly hearsay. See M.R.E. 801(c) (defining “hearsay”). But the question is — was it admissible hearsay?
¶ 12. Hearsay is inadmissible unless the law provides an exception. M.R.E. 802; see M.R.E. 803 (exceptions that apply regardless of whether the declarant is available to testify); M.R.E. 804 (exceptions that apply only when declarant is “unavailable” to testify). In this case, two exceptions were employed — Rule 803(4)’s exception for “[sjtatements made for purposes of medical diagnosis or treatment” and Rule 803(25)’s exception for “statement[s] made by a child of tender years describing any act of sexual contact performed with or on the child by another[.]” M.R.E. 803(4) <& (25). Webb argues both exceptions were misapplied, entitling him to a new trial.
¶ 13. We review the admission of evidence for abuse of discretion. Palmer v. State, 986 So.2d 328, 331 (¶ 12) (Miss.Ct. App.2007). And our review shows no errors warranting a new trial.
I. Corroborative Testimony

A. Medical-Diagnosis Exception

¶ 14. The trial judge admitted Dr. North’s testimony, which contained hearsay statements from both Hope and Tash-anda, through the medical-diagnosis exception. See M.R.E. 803(4). Webb concedes Hope’s statements were admissible but insists Tashanda’s statements to Dr. North were outside the scope of Rule 803(4) because Tashanda was not Dr. North’s patient.'
¶ 15. The Mississippi Supreme Court rejected this argument in Valmain v. State, 5 So.3d 1079, 1083-84 (¶¶ 13-17) (Miss.2009). In Valmain, the supreme court found that, because “Rule 803(4) ‘casts its net wider than the patient-physician relationship,’ ” the trial judge had dis *598 cretion to admit statements made by the child’s mother for purposes of medical diagnosis. Id. at 1083 (¶ 14) (quoting In re B.R., 270 Neb. 685, 708 N.W.2d 586, 591 (2005)). We likewise find no abuse of discretion in the trial court’s admitting Tash-anda’s hearsay statements through Dr. North. Though she was not in a patient-physician relationship with Dr. North, Tashanda told Dr. North about Webb’s sexual abuse for purposes of Hope’s medical diagnosis. Thus, her statements fall within the exception found in Rule 803(4). See Davis v. State, 878 So.2d 1020,1024-25 (¶ 14) (Miss.Ct.App.2004) (holding that statements about child sexual abuse, including “the identity of the perpetrator,” fall within the scope of Rule 803(4)).

B. Tender-Years Exception

¶ 16. The trial judge found Hope’s statements to the other corroborative witnesses were admissible through Rule 803(25), the tender-years exception. Rule 803(25) permits the admission of “[a] statement made by a child of tender years describing any act of sexual contact performed with or on the child by another[.]” Under Rule 803(25):
(1) the trial judge must find the child was of tender years when she made the statement;
(2) in a hearing outside of the jury’s presence, the trial judge must find the statement has substantial indicia of reliability; and
(3) the child must testify (or be “unavailable as a witness,” which triggers additional requirements).
Palmer, 986 So.2d at 331 (¶ 11) (citing M.R.E. 803(25)).
¶ 17. Hope testified at trial, clearly meeting the third element. What Webb challenges is the first and second elements. Concerning Tashanda and Daniels, who testified at the pretrial hearing, Webb argues the trial judge’s findings based on their testimony were erroneous. As to the other Rule 803(25) witnesses, Webb argues the trial judge failed to make findings of Hope’s tender years and the reliability of her statements to them.

1. Finding Hope Was of Tender Years

¶ 18. The second element of Rule 803(25) — whether Hope was a child of tender years when she made statements about Webb’s abuse — considers Hope’s mental and emotional age at the time she made the statements, not at the time she testified at trial. Marshall v. State, 812 So.2d 1068, 1075 (¶ 20) (Miss.Ct.App.2001) (citing McGowan v. State, 742 So.2d 1183, 1186 (¶ 18) (Miss.Ct.App.1999)). Rule 803(25) does not “set a specific age criterion” for when a child is of tender years. Veas ley v. State, 735 So.2d 432, 436 (¶ 14) (Miss.1999). So for guidance, our supreme court has created an age-based presumption. Under this rebuttable presumption, a child under twelve years is presumed to be of tender years. But a case-specific determination must be made when deciding whether children twelve years or older are of tender years. Id. at 436-37 (¶ 16). “This determination should be made on the record and based on a factual finding as to the victim’s mental and emotional age.” Id. at 437 (¶ 16).
¶ 19. Hope was eleven when she confided in Amber, which carries the presumption of tender years. But because Hope was twelve or older when she reported Webb’s abuse to everyone else, the trial judge had to make an on-the-record determination, based on factual findings, that her mental and emotional age was of tender years.
¶ 20. We find the trial judge made such a case-specific determination. After listening to Hope’s, Tashanda’s, and Daniels’s testimony, and watching the MCAC video-recorded interview of Hope, the trial *599 judge made the on-the-record finding that Hope’s mental and emotional age at the time she reported Webb’s abusive acts was one of tender years. Because the trial judge supported his findings with substantial evidence, we reject Webb’s argument that this finding was an abuse of discretion.
21. We also reject Webb’s argument that this finding did not apply to the other corroborative witnesses because they did not testify at the pretrial hearing. Hope was the same age when she talked to her mother and the MCAC as she was when she reported abuse to Pierre, Norton, Weathersby, Skinner, and Detective Bacon. And Hope was a year younger when she told Morgan and Alaya. It defies logic to suggest the trial judge would have found, for tender-years purposes, Hope was actually “older” at the time she made statements to these other witnesses. Further, Hope herself, through the MCAC interview, described the circumstances in which she confided in each corroborating witness, from which the trial judge could deduce her mental and emotional age at those times.
¶ 22. Because the trial judge considered Hope’s age at the time she made all statements about the abuse, we find Veas ley’s requirement of a case-specific determination of tender years was met.

2. Reliability of Hope’s Statements

¶ 23. For the third element of Rule 803(25) — whether Hope’s statements have substantial indicia of reliability — the trial judge had to “make an overall determination [that Hope,] the child declarant[,] was particularly likely to be telling the truth[.]” Hennington v. State, 702 So.2d 403, 415-16 (¶ 54) (Miss.1997) (quoting Griffith v. State, 584 So.2d 383, 388 (Miss. 1991)). As the rule and its official comment states, this finding should be made: (1) “on the record,” M.R.E. 803(25) cmt., (2) “in a hearing conducted outside the presence of the jury.” M.R.E. 803(25). Consequently, both the Mississippi Supreme Court and this court have held the failure to conduct a separate reliability hearing and make an on-the-record finding about the reliability of the statements is error — albeit potentially harmless error. Rogers v. State, 95 So.3d 623, 629 (¶ 19) (Miss.2012) (applying harmless-error analysis when State conceded there was no separate hearing outside the jury’s presence and no reliability finding); Klauk v. State, 940 So.2d 954, 956-57 (¶¶ 6-8) (Miss. Ct.App.2006) (applying harmless-error analysis to absence of on-the-record finding of statements’ reliability).
¶24. To make this on-the-record finding, the trial judge must consider twelve factors, which are listed in Rule 803(25)’s official comment.[3] But we have *600 held that a sufficient on-the-record finding of reliability does not require “each factor be listed and discussed separately by the trial judge.” Bosarge v. State, 786 So.2d 426, 437 (¶ 32) (Miss.Ct.App.2001).
¶25. After the separate hearing in which Hope, Tashanda, and Daniels testified, the trial judge made the overall finding that Hope was particularly likely to be telling the truth about Webb’s sexually abusing her. This finding was on the record. And while the judge did not list each reliability factor, he stated for the record that he had carefully considered each of them. He also emphasized several factors that weighed in his decision that Hope’s statements were reliable: (1) Tashanda testified Hope told the truth on regular occasions; (2) Daniels testified Hope seemed credible and that her statements were consistent with a child who has been sexually abused; and (3) Hopes own video-recorded statement that was introduced at the hearing appeared to be spontaneously made and consistent with the statements she had made to others. Further, the judge specifically found there was no motive for Hope to make up the allegations — instead, Hope for years tried to cover up Webb’s actions to protect her mother. See Veasley, 735 So.2d at 436 (¶ 11) (excusing a child-abuse victim’s delay in “making the complaint . -.. [when] it is caused by fear or other equally effective circumstances” (citation omitted)). Because the trial judge supported his finding with substantial evidence, we find no abuse of discretion in his finding Hope’s statements to the corroborating witnesses were reliable.
¶ 26. The trial judge found there were “indeed substantial indicia of reliability concerning all these statements” — not just the ones to Tashanda and Daniels. Webb asserts that, because there was no way for the trial judge to know Hope’s statements to the other corroborating witnesses were reliable until he heard from those witnesses in a hearing outside the jury’s presence, the failure to proffer these witnesses’ testimony was reversible error.
¶ 27. First, we note the lack of a proffer, was at the State and Webb’s counsel’s consent. But since that consent was apparently given in an off-the-record conference, we hesitate to find waiver, especially since the State acknowledged Webb’s continuing objection to the hearsay testimony.
¶ 28. Second, despite no on-the-record proffer, the record does show the trial judge ■ was apprised of the statements Hope made to these other witnesses. Hope herself testified at the pretrial hearing — in person and through her MCAC interview — about these statements. And the judge found these additional statements were reliable because they were consistent with Hope’s disclosures to her mother and the MCAC. We acknowledge one of the twelve reliability factors is “the credibility of the person testifying about the statements.” M.R.E. 803(25) cmt. And without a proffer, the trial judge could not weigh the corroborative witnesses’ credibility prior to their testifying. But this factor is but one of twelve, which all drive at “whether the child declarant was particularly likely to be telling the truth when the statements] [were] made.” Hennington, 702 So.2d at 415 (¶ 54). Because we find the trial judge, through evidence presented at the pretrial hearing, had sufficient evidence to admit Hope’s statements to all the witnesses through the< tender-years exception, we find no error.

3. Harmless Error

¶ 29. Even if it was error to admit these additional witnesses’ testimony without first considering it in a separate hearing, we find such error harmless.
*601 ¶ 30. In Klauk, this court applied harmless-error analysis to the failure to conduct an on-the-record finding of indicia of reliability. Klauk, 940 So.2d at 956-57 (¶ 7) (citing Veasley, 735 So.2d at 437 (¶ 17)). Under the harmless-error test, this court “must determine whether the weight of the evidence against the defendant is sufficient to outweigh the harm done by allowing admission of the evidence.” Veasley, 735 So.2d at 437 (¶ 17) (quoting Fuselier v. State, 702 So.2d 388, 391 (¶ 9) (Miss.1997)). In Klauk, we found, even without the hearsay testimony, the victim’s testimony was sufficient to convict the perpetrator. Klauk, 940 So.2d at 957 (¶ 8).
¶ 31. Here, even without the tender-years witnesses whose testimony was not proffered, there was strong evidence against Webb. Hope testified that, beginning when she was eleven, “[Webb] would touch [her] inappropriately” on her private areas. “These things” went on for three years, progressing to oral sex. Hope admitted she hid Webb’s actions from her mother: “I knew that she was in love with this man, she had three kids by him, and I didn’t want to disrupt the family like that.” But Hope broke her silence when Webb raped her. Hope described the assault to the jury:
Jeff had called me up to the den and [said] that he wanted to talk to me, which he actually didn’t, and he told me to get on the floor. And I pushed him. He just told me to just get on the floor. And that’s when he pulled my pants down and he tried to, well he did ... rape[ ] me.
The jury also watched the video of Hope’s interview with the MCAC, whose admission is not in dispute. And they heard corroborating testimony by Tashanda and Daniels. Dr. North testified Hope’s hymen was torn — an indicator of intercourse. Sergeant Myers and Moyse also testified about the physical evidence implicating Webb.
¶ 32. Since the weight of the remaining evidence heavily outweighs any harm done by applying the tender-years doctrine without first proffering the testimony of the corroborating witnesses, we find no reversible error.

C. Weight of the Evidence

¶ 33. For the same reason, we reject Webb’s argument that the jury’s verdict was contrary to the overwhelming weight of the evidence. “[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice.” Bush v. State, 895 So.2d 836, 844 (¶ 18) (Miss.2005). No such injustice would be present here. Weighing the above evidence in the light most favorable to the verdict, we find the weight of the evidence supports Webb’s conviction of all three crimes.

D. Cumulative Evidence

¶ 34. We also reject Webb’s argument that, because the corroborative evidence was cumulative to Hope’s testimony, the trial judge abused his discretion in admitting this evidence. Not only is this argument waived, it also lacks merit.
¶ 35. Webb argues the trial judge erred by failing to conduct the balancing test of Mississippi Rule of Evidence 403, which permits the trial judge to exclude admissible evidence “if its probative value is substantially outweighed ... by considerations of ... needless presentation of cumulative evidence.” But Webb never asked the trial judge to consider the cumulative nature of the testimony because he made no Rule 403 objection at trial. With the exception of Alaya, Webb’s only objection to the corroborative witnesses’ testi *602 mony was that it was inadmissible hearsay, not that it was needlessly cumulative. See Rodgers v. State, 777 So.2d 673, 675 (¶8) (Miss.Ct.App.2000) (citation omitted) (holding an “objection on one ground at trial waives all other grounds on appeal”). “It is well-settled law that ‘objections to the admissibility of evidence must specifically state the grounds, otherwise the objection is waived.’ ” Id. (quoting Oates v. State, 421 So.2d 1025,1030 (Miss.1982)).
¶ 36. The only witness for which Webb did not waive a cumulativeness objection is Alaya — and the reason Webb objected was that Alaya was present when Hope told her friend Morgan about Webb’s abuse, and Morgan had just testified. Because the trial judge overruled the objection after considering its probative value, we find no abuse of discretion in admitting Alaya’s testimony.
¶ 37. Further, the supreme court has held: “Where corroborative evidence exists and the hearsay evidence is merely cumulative, the admission may be held to be harmless.” Young v. State, 679 So.2d 198, 203 (Miss.1996) (citing Jones v. State, 606 So.2d 1051, 1057 (Miss.1992)). So the fact that the corroborative witnesses’ testimony was cumulative to Hope’s testimony, instead of compounding any error, as Webb argues, actually contributed to the harmlessness of its admission.
¶ 38. Hope had to testify to satisfy Rule 803(25). Thus, her testimony, contrary to Webb’s assertions, qualified rather than disqualified the other witnesses’ hearsay testimony for admission through the tender-years exception.
II. Ineffective Assistance of Counsel
¶39. Webb additionally argues his trial counsel was ineffective for (1) failing to object to the hearsay evidence, which was also cumulative, and (2) “general errors and omissions.” Since the trial record is insufficient to evaluate Webb’s claim, we deny the claim without consideration, preserving the claim for a motion for post-conviction relief. See Aguilar v. State, 847 So.2d 871, 878 (¶ 17) (Miss.Ct. App.2002) (citing Read v. State, 430 So.2d 832, 837 (Miss.1983)).
¶40. Webb acknowledges this court’s general practice of not considering claims of ineffective assistance of counsel on direct appeal, where there is usually insufficient evidence in the trial record to evaluate the claim. See id. (citing Edwards v. State, 797 So.2d 1049, 1060 (¶ 30) (Miss.Ct. App.2001)). But he argues his direct appeal presents one of the “rare occasions” where we can rule on the merits of the claims.
41. We only consider an ineffective-assistance-of-counsel claim on direct appeal when: “(1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.” Id. (quoting Colenburg v. State, 735 So.2d 1099, 1101 (¶ 5) (Miss.Ct. App.1999)). While Webb stipulates the record is adequate, the State does not. With no stipulation by both parties and no apparent “ineffectiveness of constitutional dimensions” in the trial record, we will not address the merits of Webb’s claims — particularly when Webb is claiming his counsel did not adequately object to the hearsay witnesses, and the bench conference in which his counsel agreed to admit the tender-years witnesses without a proffer is not part of the trial record.
1142. We affirm.
¶ 43. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT OF CONVICTION OF COUNT I, SEXUAL BATTERY, AND SENTENCE OF *603 THIRTY YEARS; COUNT II, STATUTORY RAPE, AND SENTENCE OF THIRTY YEARS; AND COUNT III, GRATIFICATION OF LUST, AND SENTENCE OF FIFTEEN YEARS, WITH ALL SENTENCES TO RUN CONSECUTIVELY, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, ROBERTS, RUSSELL AND FAIR, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.

. Hope is a fictitious name, used due to the young age of the victim and the nature of the crimes against her. To further protect her, only the first names of her friends and mother are used.

. These ten witnesses were:
(1) Amber (friend in whom Hope confided when Hope was eleven),
(2) Morgan (friend in whom Hope confided when Hope was thirteen),
(3) Alaya (friend in whom Hope confided when Hope was thirteen),
(4) Pierre (friend in whom Hope confided when Hope was fourteen),
(5) Norton (school counselor in whom Hope confided when Hope was fourteen),
(6) Tashanda (Hope's mother in whom Hope confided when Hope was fourteen),
*597 (7) Daniels (interviewer with MCAC, where Hope was interviewed when Hope was fourteen),
(8) Monica Weathersby (DHS family-protection specialist who interviewed Hope when she was fourteen),
(9) Carlotta Bacon (child-protection detective for the Jackson Police Department (JPD), who interviewed Hope when she was fourteen), and
(10) Jennifer Skinner (a clinical social worker who interviewed Hope when she was fourteen).

. These factors, often referred to as the Wright factors, e.g., Hennington, 702 So.2d at 415-17 (¶¶ 54, 62) (citing Idaho v. Wright, 497 U.S. 805, 821-22, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)), include:
(1) whether there is an apparent motive on declarant’s part to lie;
(2) the general character of the declarant;
(3) whether more than one person heard the statements;
(4) whether the statements were made spontaneously;
(5) the timing of the declarations;
(6) the relationship between the declarant and the witness;
(7) the possibility of the declarant’s faulty recollection is remote;
(8) certainty that the statements were made;
(9) the credibility of the person testifying about the statements;
(10) the age or maturity of the declarant;
(11) whether suggestive techniques were used in eliciting the statement; and
(12) whether the declarant’s age, knowledge, and experience make it unlikely that the declarant fabricated.
M.R.E. 803(25) cmt.