IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

IN RE INTEREST OF PATRICK B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF PATRICK B., JR., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE AND CROSS-APPELLANT,
V.
PATRICK B., SR., APPELLANT, AND TRUDY T., APPELLEE AND CROSS-APPELLANT.

Filed November 25, 2014.    No. A-14-498.

Appeal from the Separate Juvenile Court of Douglas County: WADIE THOMAS, Judge. Affirmed.

Thomas C. Riley, Douglas County Public Defender, and Claudia L. McKnight for appellant.

Donald W. Kleine, Douglas County Attorney, Jake Enenbach, and Kati Kilcoin, Senior Certified Law Student, for appellee State of Nebraska.

Ashley R. Trankle, of Dornan, Lustgarten & Troia, P.C., L.L.O., for appellee Trudy T.

IRWIN, INBODY, and PIRTLE, Judges.

IRWIN, Judge.

## I. INTRODUCTION

Patrick B., Sr. (Patrick Sr.), appeals and Trudy T. cross-appeals from an order of the juvenile court which adjudicated their minor child, Patrick B., Jr. (Patrick Jr.), to be a juvenile as defined in Neb. Rev. Stat. § 43-247(3)(a) (Supp. 2013). On appeal, both Patrick Sr. and Trudy assert that there was insufficient evidence to warrant the adjudication of Patrick Jr. pursuant to § 43-247(3)(a). Upon our de novo review of the record, we find sufficient evidence to support the juvenile court's finding that it had jurisdiction over Patrick Jr., and we affirm the order to adjudicate him under § 43-247(3)(a) as to both of his parents.

- 1 -

## II. BACKGROUND

On January 7, 2014, Patrick Sr. and Trudy brought Patrick Jr., who was then 1 year old, to a scheduled appointment with his pediatrician. During this appointment, Patrick Sr. and Trudy engaged in a verbal argument with each other after the pediatrician informed them that Patrick Jr. had what appeared to be "bedbug bites" on his body. During the course of this argument, Trudy informed the pediatrician and a patient care coordinator, who was also present during the examination, that Patrick Sr. did not help her care for Patrick Jr. because of his drug use. Trudy also indicated that she and Patrick Sr. had a volatile relationship which included physical violence. Patrick Sr. did not admit or deny Trudy's allegations, but did state that he was afraid of Trudy because she had been physically violent with him. At some point during the argument, Trudy left the examination room. Patrick Sr. became very upset after Trudy left and told the medical professionals that if Trudy had really left he and Patrick Jr., that he was going to have to leave Patrick Jr. at the doctor's office because he was not capable of taking care of him.

Ultimately, Trudy was located in the parking lot of the doctor's office and she and Patrick Sr. were able to agree that they could leave together with Patrick Jr. However, after they left, the patient care coordinator contacted the Department of Health and Human Services (the Department) to report the incident and her concerns about Patrick Jr.'s safety.

A few days after the Department received this report, on January 14, 2014, the State filed a petition in the juvenile court seeking to adjudicate Patrick Jr. as a child within the meaning of § 43-247(3)(a). In the petition, the State alleged that Patrick Jr. lacked proper parental care by reason of the faults or habits of Patrick Sr., in that Patrick Jr. was born with a hole in his heart and is considered "medically fragile"; Patrick Sr. has stated he is not capable of taking care of Patrick Jr. on his own and would abandon him if he had to do so; Patrick Sr. and Trudy engage in domestic violence in the presence of Patrick Jr.; and Patrick Sr. has failed to provide Patrick Jr. with proper parental care, support, or supervision. The State also alleged that Patrick Jr. lacked proper parental care by reason of the faults or habits of Trudy, in that Patrick Jr. was born with a hole in his heart and is considered "medically fragile"; Trudy's use of alcohol and/or controlled substances places Patrick Jr. at risk for harm; Trudy and Patrick Sr. engage in domestic violence in the presence of Patrick Jr.; and Trudy has failed to provide Patrick Jr. with proper parental care, support, or supervision.

After the State filed its petition, the juvenile court entered an order placing Patrick Jr. in the temporary custody of the Department, with his physical placement to exclude the home of Patrick Sr. and Trudy, pending further hearings. Patrick Jr. has remained in an out-of-home placement for the duration of these proceedings.

In April 2014, a hearing was held on the State's petition. At the hearing, the State called four witnesses to testify: the patient care coordinator who had reported her concerns to the Department after Patrick Jr.'s January 2014 doctor's visit; Patricia T., Trudy's mother; Kathy Robertson, Patrick Sr.'s aunt; and James Barnes, a police officer who had previously responded to a domestic violence incident at Patrick Sr. and Trudy's apartment.

The patient care coordinator testified about the statements made by Patrick Sr. and Trudy during the January 7, 2014, doctor's visit. This testimony is reflected above. In addition to that testimony, the patient care coordinator testified that she spoke with Trudy over the telephone

multiple times in December 2013. During these telephone conversations, Trudy discussed her problem with substance abuse. Specifically, Trudy told the patient care coordinator that she was trying to find treatment for her addiction to methamphetamine, but that her specific program had not yet started.

Patricia testified that she had telephone and text-message conversations with Trudy during the months of November and December 2013, and during January 2014. In the course of these conversations, Trudy discussed her substance abuse problem with Patricia. Specifically, Trudy indicated to Patricia that, although she desired to end her substance abuse problem, she had used methamphetamine and other drugs as recently as January 2014. Trudy also told Patricia about arguments between herself and Patrick Sr. In fact, Trudy told Patricia that she had gotten angry with Patrick Sr. and had thrown a toaster at him. Patricia testified that she had concerns about Patrick Jr.'s safety while he was in Trudy's care.

Robertson testified about an encounter she had with Trudy in October 2013 when Patrick Sr. was in the hospital. Robertson testified that when she went to visit Patrick Sr., she observed Patrick Jr. to be in a "playpen" with Trudy in a waiting area. Patrick Jr. was wearing only a T-shirt and a dirty diaper. Trudy did not have any food for Patrick Jr. except for a bottle containing sour milk. Robertson testified that Trudy told her that she was struggling to end her use of methamphetamine. In fact, Robertson testified that Trudy asked her for money to buy drugs. Robertson also testified that Trudy repeatedly left Patrick Jr. at the hospital without informing anyone of where she was going or specifically asking anyone to care for Patrick Jr.

Barnes testified that he is a police officer in Omaha, Nebraska, and that he was on duty on July 19, 2013, when he received a radio call directing him to the apartment of Patrick Sr. and Trudy. When he arrived at the apartment complex, he found Trudy outside in the parking lot. She reported to Barnes that she and her "live-in boyfriend," Patrick Sr., had a fight with each other and that this fighting between the two of them occurred often. Trudy stated that during this most recent fight, Patrick Sr. had pushed her and she had fallen to the ground and injured her neck. Patrick Jr. was present in the apartment during this altercation.

In addition to the testimony of these four witnesses, the State also offered into evidence a stipulation entered into with both Patrick Sr. and Trudy. This stipulation provided that if a trained initial assessment worker with the Department who had worked on Patrick Jr.'s case was to testify, he would give his opinion that Patrick Jr. would be at risk for harm in his parents' care.

After the State rested its case, Patrick Sr. did not offer any evidence in his behalf. Trudy offered a stipulation with the State that if her aunt were called to testify, she would state that she has observed Trudy to be a good parent who is attentive to Patrick Jr.'s needs. In addition, she would testify that she did not observe Trudy to be under the influence of any drugs or alcohol at any time during 2013.

At the close of all the evidence, the juvenile court found that Patrick Jr. was a child within the meaning of § 43-247(3)(a) as to both Patrick Sr. and Trudy. Specifically, the court found that the State presented sufficient evidence to prove that Patrick Jr. lacked proper parental care and was at risk for harm due to Trudy's substance abuse, Patrick Sr.'s and Trudy's engaging in acts of domestic violence in the presence of Patrick Jr., and Patrick Sr.'s admission that he is unable to care for Patrick Jr. without Trudy's help.

Patrick Sr. appeals and Trudy cross-appeals from the court's decision to adjudicate Patrick Jr.

## III. ASSIGNMENTS OF ERROR

In Patrick Sr.'s appeal and Trudy's cross-appeal, they both challenge the juvenile court's decision to adjudicate Patrick Jr. to be a juvenile as defined in § 43-247(3)(a). They generally assert that the juvenile court erred in finding sufficient evidence to warrant the adjudication of Patrick Jr.

## IV. STANDARD OF REVIEW

Juvenile cases are reviewed de novo on the record, and an appellate court is required to reach a conclusion independent of the juvenile court's findings. *In re Interest of Jagger L.*, 270 Neb. 828, 708 N.W.2d 802 (2006). When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over the other. *Id.*

## V. ANALYSIS

Both Patrick Sr. and Trudy argue that the juvenile court erred in adjudicating Patrick Jr. as a child within the meaning of § 43-247(3)(a). Before we address the parties' specific assertions, we explain the statutory and case law which overlays our review of a juvenile court's decision regarding the adjudication of a minor child.

Section 43-247(3)(a) grants the juvenile court jurisdiction over any juvenile

who is homeless or destitute, or without proper support through no fault of his or her parent, guardian, or custodian; who is abandoned by his or her parent, guardian, or custodian; who lacks proper parental care by reason of the fault or habits of his or her parent, guardian, or custodian; whose parent, guardian, or custodian neglects or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such juvenile; whose parent, guardian, or custodian is unable to provide or neglects or refuses to provide special care made necessary by the mental condition of the juvenile; or who is in a situation or engages in an occupation . . . dangerous to life or limb or injurious to the health or morals of such juvenile . . . .

To obtain jurisdiction over a juvenile, the court's only concern is whether the conditions in which the juvenile presently finds himself or herself fit within the asserted subsection of § 43-247. *In re Interest of Brian B. et al.*, 268 Neb. 870, 689 N.W.2d 184 (2004). At this stage of the proceedings, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of B.R. et al.*, 270 Neb. 685, 708 N.W.2d 586 (2005); *In re Interest of Rebekah T. et al.*, 11 Neb. App. 507, 654 N.W.2d 744 (2002).

The purpose of the adjudication phase of a juvenile proceeding is to protect the interests of the child. The parents' rights are determined at the dispositional phase, not at the adjudication phase. *In re Interest of Brian B. et al., supra*. The Nebraska Juvenile Code does not require the separate juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. *In re Interest of Justine J.*, 286 Neb. 250, 835 N.W.2d 674 (2013). See, also,

*In re Interest of W.C.O.*, 220 Neb. 417, 370 N.W.2d 151 (1985). However, while the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *In re Interest of Justine J., supra.*

We now turn to an analysis of Patrick Sr.'s and Trudy's claims on appeal.

## 1. PATRICK SR.'S APPEAL

In the State's petition, it alleged that Patrick Jr. lacked proper parental care by reason of the faults or habits of Patrick Sr., in that Patrick Jr. was born with a hole in his heart and is considered "medically fragile"; Patrick Sr. has stated he is not capable of taking care of Patrick Jr. on his own and would abandon him if he had to do so; Patrick Sr. and Trudy engage in domestic violence in the presence of Patrick Jr.; and Patrick Sr. has failed to provide Patrick Jr. with proper parental care, support, or supervision. Ultimately, the juvenile court found that, with the exception of the first allegation concerning Patrick Jr.'s physical condition, the State had presented sufficient evidence to prove the allegations in the petition by a preponderance of the evidence. Upon our de novo review of the record, we cannot say that the juvenile court abused its discretion in this finding or in adjudicating Patrick Jr. to be a child within the meaning of § 43-247(3)(a) as to Patrick Sr.

At the adjudication hearing, the State presented evidence that Patrick Sr. unequivocally admitted to a health care worker that he is not capable of taking care of Patrick Jr. on his own. In fact, Patrick Sr. told this health care worker that if Trudy were to permanently leave him and Patrick Jr., that Patrick Sr. would have to leave Patrick Jr. with the health care worker. In addition to this admission by Patrick Sr., there was evidence that Trudy had previously complained that Patrick Sr. did not ever assist her in caring for Patrick Jr. Patrick Sr. seemed to corroborate this statement when he indicated that he was scared of Trudy and that that is why he did not assist her with Patrick Jr.

The State also presented evidence that Patrick Sr. and Trudy have a volatile relationship which has resulted in physical violence on several occasions. On at least one of these occasions, in July 2013, Patrick Jr. was present in their home when Patrick Sr. and Trudy fought and Patrick Sr. apparently pushed Trudy to the ground. Trudy informed the police officer who arrived on the scene that she had been injured by Patrick Sr. and that Patrick Jr. had been present during the altercation.

This evidence, taken together, is sufficient to prove by a preponderance of the evidence the State's allegations that Patrick Sr. is not capable of appropriately caring for Patrick Jr. and that Patrick Sr. has engaged in instances of domestic violence with Trudy in the presence of Patrick Jr. This evidence is also sufficient to demonstrate that Patrick Sr. has failed to provide Patrick Jr. with proper parental care, support, or supervision. There is a definite risk of harm to Patrick Jr. if he is permitted to stay in Patrick Sr.'s custody without any intervention by the juvenile court.

## 2. TRUDY'S CROSS-APPEAL

In the State's petition, it alleged that Patrick Jr. lacked proper parental care by reason of the faults or habits of Trudy, in that Patrick Jr. was born with a hole in his heart and is considered

"medically fragile"; Trudy's use of alcohol and/or controlled substances place Patrick Jr. at risk for harm; Trudy and Patrick Sr. engage in domestic violence in the presence of Patrick Jr.; and Trudy has failed to provide Patrick Jr. with proper parental care, support, or supervision. Ultimately, the juvenile court found that, with the exception of the first allegation concerning Patrick Jr.'s physical condition, the State had presented sufficient evidence to prove the allegations in the petition by a preponderance of the evidence. Upon our de novo review of the record, we cannot say that the juvenile court abused its discretion in this finding or in adjudicating Patrick Jr. to be a child within the meaning of § 43-247(3)(a) as to Trudy.

At the adjudication hearing, the State presented evidence that Trudy has used illegal drugs as recently as January 2014 and that she has admitted to multiple individuals, including a health care worker, her mother, and a member of Patrick Sr.'s family, that she is struggling to overcome an ongoing addiction to methamphetamine. Although there was also evidence that Trudy desired to overcome her substance abuse problem, there was nothing to suggest that she had made any progress toward eliminating her addiction since January 2014 when the State's petition was filed.

In addition to evidence regarding Trudy's drug use, there was also evidence presented that Patrick Sr. and Trudy have a volatile relationship which has resulted in physical violence on several occasions. As we discussed above, on at least one of these occasions, in July 2013, Patrick Jr. was present in their home when Patrick Sr. and Trudy fought and Patrick Sr. apparently pushed Trudy to the ground. Trudy informed the police officer who arrived on the scene that she had been injured by Patrick Sr. and that Patrick Jr. had been present during the altercation. Other evidence revealed that Trudy has acted violently toward Patrick Sr. Although there was no evidence that Patrick Jr. was present during that incident, this evidence does indicate that the July 2013 instance of domestic violence between Trudy and Patrick Sr. was not an isolated event.

Finally, there was evidence that Trudy has previously neglected Patrick Jr. and has failed to provide him with appropriate care and supervision. While Patrick Sr. was in the hospital in October 2013, Trudy repeatedly left Patrick Jr. at the hospital without informing anyone of where she was going or specifically asking anyone to care for Patrick Jr. She did not leave any diapers for Patrick Jr. nor did she leave any food for him, except for a bottle filled with sour milk. We note that Trudy did present some conflicting evidence regarding her abilities to appropriately care for Patrick Jr.; however, when the evidence is in conflict in a juvenile case, an appellate court may give weight to the fact that the lower court observed the witnesses and accepted one version of the facts over another. See *In re Interest of B.R. et al.*, 270 Neb. 685, 708 N.W.2d 586 (2005).

Reviewing the evidence presented by the State in its totality, we conclude that the record supports the juvenile court's finding that Patrick Jr. comes within the meaning of § 43-247(3)(a) as to Trudy. The evidence revealed that Trudy has an ongoing substance abuse problem, that she has engaged in instances of domestic violence with Patrick Sr. in the presence of Patrick Jr., and that she has been inattentive to Patrick Jr.'s basic needs. Such evidence demonstrates that Trudy has failed to provide Patrick Jr. with proper parental care, support, or supervision. There is a definite risk of harm to Patrick Jr. if he is permitted to stay in Trudy's custody without any intervention by the juvenile court.

## VI. CONCLUSION

Upon our de novo review of the record, and given that the purpose of the adjudication phase of juvenile court proceedings is to protect the interests of the child, we find sufficient evidence to support the juvenile court's finding that it had jurisdiction over Patrick Jr., and we affirm the order to adjudicate him under § 43-247(3)(a) as to both Patrick Sr. and Trudy.

AFFIRMED.